**Phillip Earl LYDIA, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–298–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 11, 2003.

William H. 'Bill' Ray, Fort Worth, for Appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Michael Casillas and Sheila Wynn, Asst. Criminal Dist. Attys., Fort Worth, for State.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REMAND

TERRIE LIVINGSTON, Justice.

Appellant Phillip Earl Lydia appeals from a jury verdict finding him guilty of

aggravated robbery causing bodily injury to a disabled person. The jury sentenced appellant to eighteen years' imprisonment. We affirm.

### Factual and Procedural Background

Appellant's point on appeal concerns questions that the prosecutor asked during voir dire. Thus, we will only include the facts relevant to this issue.[1]

During voir dire, the prosecutor asked the entire panel, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" *Lydia,* 109 S.W.3d at 496. Appellant objected to this question. *Id.* The trial court overruled the objection, but granted appellant a running objection to the question. *Id.* The prosecutor repeated the question, in various forms, to members of the panel on a group and individual basis. *Id.* at 496–97. The prosecutor further expanded on the hypothetical by asking one of the jurors if it would make a difference if the crime committed by the witness was against the defendant. *Id.* at 497. Appellant objected again, but the trial court overruled the objection and granted appellant a running objection. *Id.* The jury later found appellant guilty, and the court sentenced him to eighteen years' imprisonment.

In appellant's sole point on appeal, he complained that the prosecutor improperly attempted to bind prospective jurors to a specific factual situation during voir dire contrary to the court of criminal appeals' pronouncement in *Standefer v. State,* 59 S.W.3d 177, 181–82 (Tex.Crim.App.2001). We held that the prosecutor's questions were not commitment questions because

they did not ask the prospective jurors to resolve or refrain from resolving any issue. *Lydia,* 81 S.W.3d at 492. Because we answered this question negatively, we did not reach the second or third prongs of the *Standefer* test for commitment questions. *Id.*

The court of criminal appeals granted appellant's petition for discretionary review to determine "whether the State improperly attempted to bind prospective jurors to specific factual situations during the voir dire examination, contrary to this court's determination in *Standefer.*" *Lydia,* 109 S.W.3d at 496. The court held that the prosecutor's questions did in fact ask jurors to resolve issues concerning witness credibility on the basis of particular facts; therefore, they were commitment questions. *Id.* at 499. The court of criminal appeals then vacated and remanded the case for further analysis under the remaining prongs of the *Standefer* test for improper commitment questions. *Id.* at 500.

### Discussion

 The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002); *Allridge v. State,* 762 S.W.2d 146, 167 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). The main reason for this is that voir dire could go on forever without reasonable limits. *Faulder v. State,* 745 S.W.2d 327, 334 (Tex.Crim.App. 1987). We leave to the trial court's discretion the propriety of a particular question, and the trial court's discretion will not be disturbed absent an abuse of discretion. *Barajas,* 93 S.W.3d at 38; *Allridge,* 762

---

1. A complete factual history is contained in our previous *Lydia v. State* opinion. 81 S.W.3d 486, 488–89 (Tex.App.-Fort Worth 2002), *rev'd,* 109 S.W.3d 495 (Tex.Crim.App. 2003).

S.W.2d at 163; *Faulder*, 745 S.W.2d at 334.

■ The general rule has been that it is improper to ask a commitment question during voir dire because it would amount to an improper attempt to bind a juror. *See Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). In *Standefer*, the court of criminal appeals held that during voir dire a trial court should first determine if a question is a commitment question. 59 S.W.3d at 181–82. If it is a commitment question, then the court must decide whether it is nevertheless a proper question. *Id.* For it to be a proper commitment question, one of the possible answers to the question must give rise to a valid challenge for cause. *Id.* However, even if a question meets the "challenge for cause" requirement, the inquiry does not end there. *Id.* at 182. A proper commitment question must also contain *only* those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

■ The code of criminal procedure allows either side to challenge a juror for cause when the challenging side can show the juror is incapable or unfit to serve on the jury. TEX.CODE CRIM. PROC. ANN. art. 35.16 (Vernon 1989 & Supp.2003). The rule lists many specific challenges, but also allows a juror to be challenged for cause if either side can show "[t]hat he has a bias or prejudice in favor of or against the defendant." *Id.* art. 35.16(a)(9). The court of criminal appeals has held that a member of the venire may be properly challenged for cause and removed "if he cannot impartially judge the credibility of a witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Potential jurors "must be open-minded and persuadable, with no *extreme*

or *absolute* positions regarding the credibility of any witness." *Id.* While a defendant does not have a right to have a particular juror sit on his jury, he does have the right "*not* [to] have a particular venire member on the jury *if* the venire member is challengeable for cause or the defendant exercises one of his peremptory challenges." *Johnson v. State*, 43 S.W.3d 1, 6–7 (Tex.Crim.App.2001).

### Application

In this case, the prosecutor asked the entire venire panel whether it could fairly evaluate a witness and his testimony if the witness, here the victim, had a criminal history. The prosecutor repeatedly asked the same question of prospective jurors who indicated they might have a concern with this type of witness testimony. The prosecutor also asked whether the prospective jurors could fairly evaluate such a witness who had been convicted of crimes against the actual defendant on trial. Two jurors who gave specific statements in response to these questions were seated on the jury.

■ Because the questions are commitment questions, we must first determine if one of the possible answers to the questions would give rise to a valid challenge for cause. *See Standefer*, 59 S.W.3d at 182. By asking the questions, the prosecution was trying to learn if any of the prospective jurors would not impartially judge the credibility of the witness or if any of them had "extreme or absolute positions regarding the credibility of any witness" based on the witness's potential criminal history. *Ladd*, 3 S.W.3d at 560. The possible answers to these questions would lead to a challenge for cause under article 35.16(a)(9) based on a juror's bias. TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(9); *Ladd*, 3 S.W.3d at 560 (holding that a prospective juror may be properly chal-

lenged for cause and removed if he cannot impartially judge the credibility of a witness); *see also Rivera v. State*, 82 S.W.3d 64, 66–67 (Tex.App.-San Antonio 2002, pet. ref'd) (stating that if a prospective juror responded to a question by stating that he would automatically disbelieve a defendant's testimony simply because he was the defendant, that person would be stricken for cause). Thus, the questions meet the second *Standefer* prong for proper commitment questions. We further conclude that the questions meet the third *Standefer* prong because they contain only those facts necessary to test whether a prospective juror is challengeable for cause. *Standefer*, 59 S.W.3d at 182.[2] Accordingly, we overrule appellant's sole point.

### Conclusion

Having overruled appellant's sole point, we affirm the trial court's judgment.

DAUPHINOT, J., filed a concurring opinion.

LEE ANN DAUPHINOT, J., concurring.

This court, in its original opinion, recognized a litigant's right to ask questions for the purpose of the intelligent exercise of peremptory challenges.[1] The Court of Criminal Appeals reversed, essentially holding that a litigant has no right to ask questions for the purpose of the intelligent exercise of peremptory challenges if those questions would not reveal grounds for a challenge for cause.[2]

Texas has long recognized the importance of both voir dire and the intelligent exercise of peremptory challenges in both civil and criminal cases.[3] In the past, the Court of Criminal Appeals explained,

> *Each* party must have the right to question potential jurors in their own individual manner to emphasize a point or uncover a hidden bias and may not be forced to rely on other parties to ask similar questions.
>
> . . . .
>
> The second prong [of the test used to determine whether the trial court abused its discretion in limiting voir dire] asks whether the questions the party was not permitted to ask were proper voir dire questions. A question is proper if its purpose is to discover a juror's views on an issue applicable to the case. The trial court must not restrict proper questions which seek to discover a juror's views on an issue applicable to the case.[4]

The Court significantly limited the right of a criminal defendant to ask questions for the purpose of exercising peremptory challenges, however, in *Standefer*.[5] This limitation was accomplished by addressing the nature and propriety of "commitment questions." The Court explained that "[w]hen the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether

---

**2.** Because we have concluded that the questions were proper commitment questions under *Standefer*, we need not conduct a harm analysis.

**1.** 81 S.W.3d 486, 490 (Tex.App.-Fort Worth 2002), *rev'd*, 109 S.W.3d 495 (Tex.Crim.App. 2003).

**2.** *Lydia*, 109 S.W.3d at 497–99.

**3.** *See Babcock v. Northwest Mem'l Hosp.*, 767 S.W.2d 705 (Tex.1989).

**4.** *McCarter v. State*, 837 S.W.2d 117, 121–22 (Tex.Crim.App.1992) (citations omitted) (emphasis added by court).

**5.** *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim. App.2001).

they can follow the law in that regard." [6] The Court continued,

> However, where the law does not require the commitment, a commitment question is invariably improper. For example, a prospective juror is not challengeable for cause simply because he does not consider a particular type of evidence to be mitigating.[7]

The inquiry does not end there:

> Even if a question meets this challenge for cause requirement, however, the question may nevertheless be improper if it includes facts in *addition* to those necessary to establish a challenge for cause.[8]

As the Court pointed out, "[T]o be proper, then, a commitment question must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." [9]

The Court then summarized the test for determining the propriety of a particular commitment question:

> So, the inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question, and the trial court should not allow the question.[10]

In *Standefer*, then, the Court of Criminal Appeals held that a question is a "commitment question" if one or more of the possible answers is that a prospective juror would resolve or refrain from resolving

an issue in the case on the basis of one or more facts contained in the question, overruling *Maddux v. State*.[11]

As Judge Price noted in his dissent from *Standefer*,

> In *Babcock v. Northwest Memorial Hospital* ..., the Texas Supreme Court addressed whether the trial court had impermissibly restricted a litigant from asking about potential bias or prejudice toward tort reform. In that case the Court explained the purpose of voir dire and the origin of the right to ask questions.
>
> This right is based on the *fundamental right to trial by a fair and impartial jury*. We hold that the trial court abused its discretion by refusing to allow the Babcocks to question the jurors about the alleged "lawsuit crisis." A broad latitude should be allowed to a litigant during voir dire examination. This will enable the litigant to discover any bias or prejudice by the potential jurors so that peremptory challenges may be intelligently exercised. Although we recognize that voir dire examination is largely within the sound discretion of the trial judge, a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.
>
> Voir dire is not only to ferret out potential jurors who are challengeable for cause, but also to make intelligent use of peremptory challenges.
>
> Followed to its logical conclusion, the majority's opinion allows parties to exer-

---

6. *Id.* at 181.

7. *Id.*

8. *Id.* at 182 (emphasis added by court).

9. *Id.* (emphasis added by court).

10. *Id.* at 182–83.

11. *Id.* at 181; *Maddux v. State,* 862 S.W.2d 590 (Tex.Crim.App.1993).

cise peremptory challenges but *does not require* that trial judges allow the parties to ask questions for the intelligent exercise thereof. The majority reaches this conclusion although we have held that the loss of a peremptory challenge affects a substantial right.

A civil litigant in a law suit in which only property is at stake has a greater right to question potential jurors—and thus, a greater right to a fair and impartial jury—than a criminal defendant whose liberty or life is at stake. "I must not only register my dissent, but must exclaim, 'Color me not only amazed, but do it in chartreuse.' "[12]

While the Court questioned the validity of *Nunfio*,[13] which held that a litigant had a right to ask questions necessary to the intelligent exercise of peremptory challenges,[14] the Court did not overrule *Nunfio* until it issued *Barajas v. State*.[15]

With that opinion, the Court appears to have created a catch–22 for both the State and the defense:

> The question "can you be fair and impartial under a given set of facts?" can be repeated to include every fact in a given case. This "fair and impartial" question is a license to go fishing, without providing any concrete information for the intelligent use of peremptory or for-cause challenges. We have held that counsel may not conduct fishing expeditions during voir dire.
>
> . . . .
>
> . . . . We held that "a vague question about 'what things' the veniremember thought were important in determining whether an individual should receive a

death sentence, wholly unrelated to the sentencing scheme, amounts to a fishing expedition going beyond the scope of proper voir dire." We concluded the question was improperly broad and the trial court did not abuse its discretion in disallowing it.

In *Smith v. State*, 703 S.W.2d 641, 645 (Tex.Crim.App.1985), the trial court did not permit the defendant to ask venire members what "their thoughts" were on the insanity defense. We held this inquiry was so broad that it was a global fishing expedition. It did not "seek particular information from a particular panel member; rather, it present[ed] a general topic for discussion."

More recently and in another context, we elaborated on the need for counsel to ask specific questions. In *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999), we addressed the issue of jurors withholding information during voir dire. We held that the defendant failed to show a juror had withheld information because defense counsel's questions had been inadequate. We said "defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like." We emphasized that "[c]ounsel must ask specific questions, not rely on broad ones," and that "counsel must ask follow-up questions."

The question in *Nunfio* and the question in this case are like the questions in *Boyd [v. State*, 811 S.W.2d 105 (Tex. Crim.App. 1991) ], *Smith*, and *Gonzales*. These questions constitute global fishing

---

**12.** *Standefer*, 59 S.W.3d at 185–86 (Price, J., dissenting) (citations omitted) (emphasis added by court).

**13.** *Id.* at 185 (Keasler, J., concurring); *Nunfio v. State*, 808 S.W.2d 482 (Tex.Crim.App.1991).

**14.** *Nunfio*, 808 S.W.2d at 485.

**15.** 93 S.W.3d 36, 40 (Tex.Crim.App.2002).

expeditions, and trial courts are within their discretion to prevent the questions.[16]

Global questions that do not go to a specific issue in a case, then, are not permitted. This pronouncement by the Court seems to indicate that the questions propounded must be based on the facts and issues in the case at bar. Yet the Court has also held that a litigant runs afoul of the prohibition against commitment questions if the hypothetical scenario upon which the question is based involves facts that will be elicited at trial.[17] A general question is impermissible, and a specific question is impermissible unless it leads only to a challenge for cause. It is difficult, then, to understand what question would be permissible if it does not go to a challenge for cause.

In his concurrence to the majority opinion in *Barajas,* Judge Womack seems to suggest that no questions should be asked that go only to the exercise of peremptory challenges. This concurrence also suggests a basis for the Court's dramatic shift in attitude toward questions aimed at seeking information for exercising peremptory strikes:

> More important is the failure of the courts to consider the differences between the right to a qualified jury and the right to eliminate unfavorable jurors. "[A] defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified." The requirements of jurors' qualifications are in part constitutional and in part statutory. Article 35.16 presents an exclusive list of grounds for disqualification. Questioning about

these grounds is essential to attaining a qualified jury.

> The statutory provision of peremptory challenges provides a method of obtaining a more favorable jury, but it does not include a procedure of asking questions to implement the use of the challenges. There is no right to a favorable jury. That is why our law does not permit a party to get a prospective juror's commitment to decide an issue of fact or punishment. I would say that, similarly, there is no right to ask a juror about his views or sentiments on particular issues of fact or punishment. When the *Houston & Texas Central[,* 7 S.W. 670, 69 Tex. 650 (1888)] and *Barnes[,* 88 S.W. 805 (1905)] courts shifted from one right to another without considering their differences, they seemed to assume that they were equal, but they did not consider whether or why that should be so.

> Another problem with the right to ask peremptory-challenge questions is that the doctrine has an inherent flaw that makes it impossible to implement. Such a doctrine cannot co-exist with the doctrine that it is improper to ask a jury to commit to render a particular decision on particular evidence. As the Court points out, *ante* at 39, the closer a question comes to violating the latter doctrine, the more valuable it is in intelligently exercising peremptory challenges. It is literally impossible to apply these doctrines in a rational and predictable way.

> Since the doctrine was established, courts have adopted juror questionnaires that provide the parties with personal information about the members of the venire. . . . The questionnaires elicit information about a venire member's

---

16. *Id.* at 40–42 (citations and footnotes omitted).

17. *See, e.g., Atkins v. State,* 951 S.W.2d 787, 789 (Tex.Crim.App.1997).

name, sex, race, age, residence and mailing addresses, education level, occupation, place of employment, marital status, and a spouse's employment information. The model form that was developed as the statute required also elicits information about telephone numbers and previous jury service. Thus the parties can obtain some information for the intelligent exercise of peremptory challenges without asking questions.

Given the inadequate jurisprudential basis for this doctrine, its irreconcilable conflict with another doctrine, the impossibility of its predictable application, the effect it has in unduly lengthening the process of jury selection, and the development of alternate sources of information, I would renounce it. From the jury questionnaires, the observation of the venire members, and the extensive questioning by counsel on causes for challenge that already characterizes our practice, the parties have a great deal of information to exercise their peremptory challenges intelligently. There is no need or justification for a right to ask other questions. I would hold that it is not error for a trial court to prevent counsel from asking questions that are irrelevant to a challenge for cause.[18]

Presumably, the *Barajas* concurrence would hold that a litigant must rely on the written juror questionnaires without asking additional questions. Yet, in 1999, the Court of Criminal Appeals held that counsel who did rely on the questionnaires failed to show diligence in ferreting out disqualified jurors:

> We granted Appellant's petition for discretionary review to examine his assertion that the Court of Appeals erred in failing to find juror misconduct where a juror made a false statement on her juror questionnaire on which Appellant

relied, allegedly depriving him of the opportunity to intelligently exercise his peremptory challenges. This Court has never addressed the extent to which counsel may rely on information provided in written juror questionnaires.

We have consistently held, with respect to oral questions asked during voir dire, that error occurs where "a prejudiced or biased juror is selected *without fault or lack of diligence on the part of defense counsel,* such counsel acting in good faith on the juror's responses and having no knowledge of their inaccuracy." Thus, we have long insisted that counsel be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias:

> defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like. Unless defense counsel asks such questions, we must hold, as we do here, that the purportedly material information which a juror fails to disclose is not really "withheld" so as to constitute misconduct which would warrant a reversal.

Counsel must ask specific questions, not rely on broad ones, to satisfy this obligation. And counsel must ask follow-up questions after uncovering potential bias. We have consistently held there is no error where counsel has not met that obligation.

We see no reason why counsel's burden to use diligence should be any less in the case of written juror questionnaires. *Particularly* because of the nature of *written* questions, counsel should be sure to ask follow-up oral questions

***

**18.** *Barajas,* 93 S.W.3d at 44–45 (Womack, J., concurring) (citations omitted).

concerning any information on the form that counsel deems material. While a questionnaire may serve as an efficient vehicle for collecting demographic data, it is not the most reliable way to collect other types of information. Counsel should never assume that the respondents will understand each question as it was intended by counsel to be understood. As this case illustrates, written questions are by nature vulnerable to misinterpretation—even questions that appear to be subject to only one interpretation. For this reason, "diligent counsel" will not rely on written questionnaires to supply any information that counsel deems material. Counsel who does otherwise is simply not diligent.[19]

What is the rule now? Must the lawyer ask specific questions based on the issues in the case, or must he not? Must the lawyer rely on the jury information cards, or must he not? The conflicting mandates from the Court of Criminal Appeals make it very difficult for the bar, the trial judges, and the intermediate courts to grasp the rule, much less follow and enforce it. I would suggest that, apart from my own intellectual limitations, there is confusion at all levels about what constitutes a "commitment question."

A "commitment question" is a question through which an attorney attempts to bind or commit a prospective juror to a verdict based on a hypothetical set of facts.[20] It would appear to me that a question delving into existing opinions, biases, mind-sets, attitudes, values, and prejudices does not seek to bind or commit a prospective juror. Rather, the question would appear to be wholly appropriate in determining whether that veniremember is a person who will listen to the witnesses before making up her mind, whether she will be unduly influenced by a videotape because she believes televisions never lie, or whether she is independent or wants only to be in agreement with the majority.

For example, in the trial of a person with purple hair, the question, "Would you automatically believe a person with purple hair is immoral and a liar?" is not an attempt to commit the prospective juror to believing the defendant is immoral and a liar. It is an inquiry, just as the question, "Can you be fair to a person with purple hair if the victim has gray hair?" is an inquiry. There is no attempt to commit or bind the prospective juror to any verdict other than a fair one. And, although these questions do not in themselves establish a basis for a challenge for cause, questions intended to aid in determining peremptory challenges often lead to bases for challenges for cause. If the answer to the last question is "No. I think anyone with purple hair must be guilty unless you can prove he is not," the veniremember may well have a bias against the defendant that would be a ground for a challenge for cause.

Voir dire is tedious. But trial judges have tools within their discretion for controlling the length of voir dire. Lawyers must be allowed to try their cases, and trial judges must be trusted to control their trials. It is rare that a trial judge is reversed for abusing his or her discretion in allowing questioning during voir dire. The legislature has authorized the use of peremptory strikes.[21] They are meaningless if we usurp from the trial judge and the lawyers the conduct of the trial. By creating rules that essentially gut the law-

19. *Gonzales,* 3 S.W.3d at 916–17 (emphasis added by court).

20. *Standefer,* 59 S.W.3d at 179.

21. *See* Tex.Code Crim. Proc. Ann. art. 35.15 (Vernon 1989 & Supp.2003).

yer's ability to seek information for determining the exercise of peremptory strikes, we make a mockery of the legislature's intent in creating the right to make peremptory strikes. And, with all respect, the jury information cards are merely the beginning of the inquiry. They provide little useful information for exercising any kind of strike. The long information sheets provided in some courts are more helpful, but still only the beginning of the inquiry.

When we become more concerned with the speed of a trial or the level of boredom that we must endure as judges, lawyers, and veniremembers than we are with the fairness of the trial, we lose much more than we gain. No one has the right to a specific juror, but both the State and the defense, under the law as it is written, have the right to more than merely minimally-qualified jurors. They have the right to a pool of qualified jurors from which to make their peremptory strikes.

In the case now before this court, the State asked, in various forms, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" This question probably was an attempt to commit the prospective jurors to consider impeachment evidence in a particular manner. The offending question, however, appears to be whether it would make a difference if the crime committed by the witness was against the defendant. This is the question that involves the peculiar facts of this case. It is difficult for me to determine what this question attempted to commit the prospective jurors to do. As phrased, the question may have been improper, not because it attempts to commit the veniremembers to a particular course of action, but because it violates the hoary rule against voir dire questions based on the specific facts of the case on trial.[22] While the old rule included a prohibition against attempting to bind the jurors to a particular course of action based on the facts of the case, the prohibition was not limited to commitment questions but included any attempt to inquire into the veniremembers' attitude toward the facts of the case. Appellant, however, did not object on this ground.

The legislature has provided that the State, as well as the defense, is entitled to exercise peremptory strikes.[23] No less than the defense, the State should be entitled to make necessary inquiries to determine the attitudes of the veniremembers in order to use those strikes intelligently. A mere inquiry into a veniremember's thoughts and opinions is not an attempt to commit that veniremember. While the State should not ask a prospective juror to promise not to dismiss a witness's testimony if that witness has a criminal record, the State should be able to ask whether the prospective juror believes that the fact of a criminal record might affect the way he or she would view the testimony. Evidence of a prior conviction is impeachment evidence. A juror is not disqualified for believing that evidence of a witness's prior conviction might affect the way the juror would view that witness's testimony. This question should be proper even if the State does not follow the question with other questions leading to a challenge for cause.

**22.** *See, e.g., White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982).

**23.** *See* Tex.Code Crim. Proc. Ann. art. 35.15.

While we hold that possible answers to these questions would lead to a challenge for cause based on a juror's bias,[24] other possible answers would not. Yet under *Barajas,* because the question does not *necessarily* call for an answer that would make the juror subject to a challenge for cause, we should hold the question to be improper.[25] Holding the question improper, however, deprives the State of any real vehicle for learning how the prospective jurors view their obligation to determine the credibility of witnesses with criminal records.

Surely, so long as the legislature permits peremptory strikes, litigants must be able to ask the questions that will allow them to exercise this right intelligently. So long as the defense is allowed peremptory strikes, counsel can only render effective assistance in voir dire if he can pose reasonable questions to explore areas that would lead to a peremptory strike. So long as the State is allowed peremptory strikes, the State must be allowed to pose reasonable questions to explore areas that would lead to a peremptory strike. For this court to say, "We know the legislature has provided you the right to exercise peremptory strikes, but we will not allow you to ask questions to exercise that right intelligently," is to make a mockery of the statute and to set ourselves up as a super legislature.

As a justice on an intermediate court of appeals, I am mindful of our duty to follow precedent established by our higher courts. Respectfully, however, I would ask the Court of Criminal Appeals to reconsider its holding in *Barajas* to the extent that it does not allow questions for the purpose of peremptory challenges, and to reconsider and clarify its definition of a "commitment question."