COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-391-CR

 

 

DEBRA
TIJERINA                                                                 APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

        Following
the issuance of our original opinion, the State filed a motion for rehearing
arguing that the error in the case was harmless.  We deny the State=s motion
for rehearing, but we withdraw our opinion and judgment issued February 2,
2006, and substitute the following in their place to more fully address the
harm analysis. 

 

 








I. Introduction

Appellant Debra Tijerina appeals her conviction
for possession of methamphetamine of less than one gram.  The controlling issue in this appeal is
whether a distinction exists between the voir dire question in this caseCAIs there
anybody here who feels that you would automatically disbelieve somebody simply
because they are a convicted felon, be they a witness, a police officer, a
defendant, anybody?@Cand the
voir dire questionCADo each
of you feel as though you could evaluate a witness and his testimony and decide
if he=s being
truthful without automatically dismissing his testimony because of some
criminal history?@Cwhich
the court of criminal appeals held in Lydia v. State was a commitment
question.  109 S.W.3d 495, 499 (Tex.
Crim. App. 2003).  Because we perceive no
distinction between these questions, we hold that the question in this case was
a commitment question, we follow our analysis in Lydia on remand, and we
conclude that the trial court abused its discretion by prohibiting the defense
from asking the question.  See Lydia
v. State, 117 S.W.3d 902, 904 (Tex. App.CFort
Worth 2003, pet. ref=d). We apply the harm analysis
as instructed by the court of criminal appeals in Rich v. State, and we
hold that Tijerina=s substantial rights were
affected by this error.  See 160
S.W.3d 575, 577-78 (Tex. Crim. App. 2005). 
Accordingly, we reverse the trial court=s
judgment and remand the case for a new trial.








 

II.  Factual and Procedural Background

Two Fort Worth police officers stopped Tijerina
in her car after observing her drive the wrong way against traffic.  Carla Canada was riding in the passenger
seat.  While one officer ran a check of
the information Tijerina gave him, the other officer saw Tijerina reach into a
purse sitting on the center console, pull out a day planner, and place it
between some bags in the backseat.  The
officers arrested Tijerina because she had outstanding warrants for her
arrest.  A subsequent search of the car
revealed a baggie of methamphetamine next to the day planner in the backseat
and two baggies containing methamphetamine residue inside the day planner.  The State charged Tijerina with possession of
methamphetamine of less than one gram, and the indictment included an
enhancement paragraph alleging Tijerina had two prior felony convictions for
forgery by possession of a check with intent to pass.  Tijerina pleaded not guilty.  

During voir dire, Tijerina=s
defense counsel asked one of the venire members if he would Aautomatically
disbelieve somebody simply because they are a convicted felon,@ and the
State did not object to this question. 
The following exchange then took place:








[DEFENSE COUNSEL]: . . . .  Is
there anybody here who feels that you would automatically disbelieve somebody
simply because they are a convicted felon, be they a witness, a police officer,
a defendant, anybody?  . . . .

 

[PROSECUTOR]:  Judge, I object
to that statement, invading the province of the jury, certainly entitled to
assess credibility however they like and we object on those grounds.

 

THE COURT:  Sustained.

 

[DEFENSE COUNSEL]:  I would ask
that question of each and every juror if I were given the opportunity.  Is the Court telling me I can=t?

 

THE COURT:  I would sustain the
objection.    

 

After both sides made their challenges, Tijerina=s
defense counsel moved to quash the panel and for a mistrial, reiterating his
desire to ask whether the venire members Awould
simply disbelieve a witness simply because they were a convicted felon.@  The trial court denied his requests.  He then asked to reopen voir dire to ask the
question as he had just stated it, and the trial court again denied his
request.   

III.  Proper Commitment Question








In her first point, Tijerina contends that the
trial court erred by sustaining the State=s
objection to defense counsel=s
question in voir dire regarding whether potential jurors would automatically
disbelieve a convicted felon.  The State
responds that the question was an improper commitment question because it did
not lead to a valid challenge for cause or, in the alternative, that Tijerina
was not harmed by the trial court=s ruling
prohibiting defense counsel from asking the question.    

A. 
Standard of Review Concerning Voir Dire Questions

A trial court has broad discretion over the
process of selecting a jury. Barajas v. State, 93 S.W.3d 36, 38 (Tex.
Crim. App. 2002); Allridge v. State, 762 S.W.2d 146, 167 (Tex. Crim.
App. 1988), cert. denied, 489 U.S. 1040 (1989); Lydia, 117 S.W.3d
at 904.  We leave to the trial court=s
discretion the propriety of a particular question, and the trial court=s
discretion will not be disturbed on appeal absent an abuse of that discretion.  Sells v. State, 121 S.W.3d 748, 755 (Tex.
Crim. App.), cert. denied, 540 U.S. 986 (2003); Barajas, 93
S.W.3d at 38; Allridge, 762 S.W.2d at 163; Lydia, 117 S.W.3d at
904.  A trial court abuses its discretion
only when it prohibits a proper question about a proper area of inquiry.  Barajas, 93 S.W.3d at 38; Allridge,
762 S.W.2d at 163.

B.  Standefer
Analysis








The determination of whether a question
propounded to venire members during voir dire is a proper commitment question
is a three-part inquiry.  See
Standefer v. State, 59 S.W.3d 177, 182-83 (Tex. Crim. App. 2001); see
also Lydia, 117 S.W.3d at 905.  In Standefer,
the court of criminal appeals held that a trial court should first determine if
a question is a commitment question.  59
S.W.3d at 182-83.  A commitment question
is one that commits a prospective juror to resolve, or refrain from resolving,
an issue a certain way after learning a particular fact.  Id. at 179.  If a question is a commitment question, then
the court must decide whether it is nevertheless a proper question.  Id. at 181-82.  For a question to be a proper commitment
question, one of the possible answers to the question must give rise to a valid
challenge for cause.  Id. at
182.  However, even if a question meets
the Achallenge
for cause@ requirement, the inquiry does
not end there.  Id.  A proper commitment question must also
contain only those facts necessary to test whether a prospective juror is
challengeable for cause.  Id.








Either side may challenge a juror for cause when
it can show that the juror is incapable or unfit to serve on the jury.  Tex.
Code Crim. Proc. Ann. art. 35.16 (Vernon Supp. 2005).  A juror may be challenged for cause if either
side can show A[t]hat the juror has a bias or
prejudice in favor of or against the defendant.@  Id. art. 35.16(a)(9).  AA
challenge for cause is only proper based on bias if a prospective juror harbors
an automatic predisposition toward one view of witness credibility based
upon knowledge of a certain fact about the witness.@  Harris v. State, 122 S.W.3d 871, 880
(Tex. App.CFort Worth, 2003, pet. ref=d)
(emphasis added).  The court of criminal
appeals has held that a potential juror may be properly challenged for cause
and removed Aif he cannot impartially judge
the credibility of a witness.@  Ladd v. State, 3 S.W.3d 547, 560 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).  This means that Ajurors
must be open-minded and persuadable, with no extreme or absolute positions
regarding the credibility of any witness.@  Id.








In this court=s
original opinion in Lydia, we held that the question, ADo each
of you feel as though you could evaluate a witness and his testimony and decide
if he=s being
truthful without automatically dismissing his testimony because of some
criminal history?@ was not a commitment question.[1]  See 81 S.W.3d 486, 492 (Tex. App.CFort
Worth 2002, pet. ref=d), vacated, 109 S.W.3d
at 495.  The court of criminal appeals
granted Lydia=s petition for discretionary
review and held that the question was a commitment question because it Aasked
whether the prospective juror would resolve the issue of witness credibility
based on a particular factBthe
witness=[s]
criminal history.@ 
Lydia, 109 S.W.3d at 499-500. 
The court of criminal appeals remanded the case to this court for an
analysis under the remaining prongs of the Standefer test.  Id. 
On remand, we held that the commitment question met the remaining two
prongs of Standefer; it would lead to a proper challenge for cause based
on a juror=s bias, and it included only
those facts necessary to test whether a prospective juror was challengeable for
cause.  See Lydia, 117 S.W.3d at
904, 905-06.  Consequently, we held that
the trial court did not abuse its discretion by permitting the State to ask
this proper commitment question during voir dire.  Id. 









Here, the voir dire question that defense counsel
sought to ask is substantially the same as the question the State asked in Lydia.  Tijerina is a convicted felon, so the defense
wanted to know whether potential jurors would automatically disbelieve a
witness=s (i.e.,
the defendant=s) testimony because of the
witness=s status
as a felon.  We see no distinction
between the question here, AIs there
anybody here who feels that you would automatically disbelieve somebody simply
because they are a convicted felon, be they a witness, a police officer, a
defendant, anybody?@ and the question in Lydia,
ADo each
of you feel as though you could evaluate a witness and his testimony and decide
if he=s being
truthful without automatically dismissing his testimony because of some
criminal history?@ 
Accordingly, we hold that the question at issue here is a commitment
question because it asked prospective jurors whether they would resolve an
issue, witness credibility, based solely on a particular fact, that the witness
was a convicted felon.  See Lydia,
109 S.W.3d at 499.  Regarding the second
prong of Standefer, the question would lead to a proper challenge for
cause under article 35.16(a)(9) based on a juror=s
bias.  See Tex. Code Crim. Proc. Ann. art. 35.16(a)(9); Ladd, 3
S.W.3d at 560 (holding that a prospective juror may be properly challenged for
cause if he cannot impartially judge witness=s
credibility); Lydia, 117 S.W.3d at 905. 
The question satisfied the third prong of Standefer because it
included only those facts necessary to determine whether a prospective juror
was challengeable for cause, reference to a witness=s status
as a convicted felon.  Standefer,
59 S.W.3d at 182; Lydia, 117 S.W.3d at 906.  








The State argues that under Standefer=s second
prong the question at issue would not have led to a proper challenge for cause
because the rules of evidence allow a juror to disbelieve a witness on account
of her prior felony convictions.  See Tex. R. Evid. 609(a) (AFor
purposes of attacking the credibility of a witness, evidence that the witness
has been convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved
moral turpitude . . . .@).  The State argues, for example, that asking
potential jurors if they would automatically believe a police officer is
different from asking them if they would automatically disbelieve a convicted
felon because, under the rules of evidence, a juror has a right to disbelieve a
convicted felon.  We agree that a juror
may choose to disbelieve any witness once the witness testifies.  But if a potential juror states that he would
automatically disbelieve a witness who has not yet testified based solely on
the witness=s status as a felon, that
potential juror cannot impartially judge the credibility of the convicted felon
witness just as a potential juror who would automatically believe a police
officer cannot impartially judge the credibility of a police officer.  See Hernandez v. State, 563 S.W.2d
947, 950 (Tex. Crim. App. 1978) (holding that venire member was properly
challengeable for cause under article 35.16(a)(9) because she stated her belief
that a police officer would not tell a lie under any circumstance).  Instead, the potential juror has expressed an
absolute position regarding the credibility of a witness who has a
felony conviction.  See id.; cf.
Smith v. State, 907 S.W.2d 522, 531 (Tex. Crim. App. 1995) (holding that
venire member was not properly challengeable under article 35.16(a)(9) because
he did not state that he would always believe a Texas Ranger, but that
he would tend to believe a Ranger but still listen to the facts and
circumstances presented).  The question
posed by defense counsel in voir dire only sought to elicit whether potential
jurors had an automatic predisposition to disbelieve a witness who was a
convicted felon, and thus, it would have led to a proper challenge for
cause.  See Harris, 122 S.W.3d at
880.








We conclude that the question proposed by defense
counsel during voir dire was a proper commitment question.  Accordingly, we hold that the trial court
abused its discretion by prohibiting defense counsel from asking potential
jurors the question.  See Barajas,
93 S.W.3d at 38; Allridge, 762 S.W.2d at 163.

C.  Harm
Analysis

Having found error, we must conduct a harm
analysis to determine whether the error calls for reversal of the
judgment.  Tex. R. App. P. 44.2; see Gonzales v. State, 994
S.W.2d 170, 171 (Tex. Crim. App. 1999) (holding that impermissible exclusion of
proper question in voir dire is subject to harm analysis).  If the error is constitutional, we apply Rule
44.2(a) and reverse unless we determine beyond a reasonable doubt that the
error did not contribute to the appellant=s
conviction or punishment.  Tex. R. App. P. 44.2(a).  Otherwise, we apply Rule 44.2(b) and
disregard the error if it did not affect the appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642-43 (Tex. App.CFort Worth 1998, pet. ref=d).








Tijerina=s
complaint is governed by Rule 44.2(b).  See
Tex. R. App. P. 44.2(b); Rich,
160 S.W.3d at 577-78.[2]  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In Kotteakos, the United
States Supreme Court explained,

[I]f one cannot say, with
fair assurance, after pondering all that happened without stripping the
erroneous action from the whole, that the judgment was not substantially swayed
by the error, it is impossible to conclude that substantial rights were not
affected.  The inquiry cannot be merely
whether there was enough to support the result, apart from the phase affected
by the error.  It is rather, even so,
whether the error itself had substantial influence.  If so, or if one is left in grave doubt, the
conviction cannot stand.

 








328 U.S. at 765, 66 S. Ct. at 1248; see also Motilla v. State,
78 S.W.3d 352, 355‑58 (Tex. Crim. App. 2002); Johnson v. State, 43
S.W.3d 1, 4 (Tex. Crim. App. 2001).  In
making this determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  In Rich,
the court of criminal appeals set forth the following considerations for
evaluating the harm resulting from the trial court=s
erroneous exclusion of a proper voir dire question:  (1) any testimony or physical evidence admitted
for the jury's consideration, (2) the nature of the evidence supporting the
verdict, (3) the character of the error and how it might be considered in
connection with other evidence in the case, (4) the jury instructions, (5) the
State's theory and any defensive theories, (6) closing arguments, (7) voir
dire, and (8) whether the State emphasized the error.  160 S.W.3d at 577-78.








When a trial court improperly refuses to allow
defense counsel to ask a proper voir dire question, it is almost impossible to
determine how the error affected Athe way
in which a defense counsel would [have] conduct[ed] the trial.@  Gonzales v. State, 2 S.W.3d 600, 606
(Tex. App.CTexarkana 1999, pet. ref=d)
(noting that prudent defense counselCwhen
faced with trial court error preventing him from questioning potential jurors
about their attitudes toward a specific defenseCwould
not attempt to present evidence of that defense to jury).  Thus, courts have struggled with the
application of a harm analysis to this type of error, and some have noted that
such error will rarely be harmless.  See
Wappler v. State, 183 S.W.3d 765, 779 (Tex. App.CHouston
[1st Dist.] 2005, no pet.) (holding trial court error in prohibiting defendant
from asking proper voir dire questions harmful); Loredo v. State, 59
S.W.3d 289, 293 (Tex. App.CCorpus
Christi 2001, no pet.) (holding trial court error in refusing to allow defense
counsel to ask proper questions about parole was harmful and noting such error
will rarely be harmless); Rios v. State, 4 S.W.3d 400, 403-04 (Tex. App.CHouston
[1st Dist.] 1999, pet. dism=d)
(expressing reluctance to apply harm analysis to trial court error in
improperly limiting voir dire time but holding error harmful under Rule
44.2(a)); Gonzales, 2 S.W.3d at 603; see Cain v. State, 947 S.W.2d
262, 264 (Tex. Crim. App. 1997) (applying former Rule 81(b)(2) harm analysis to
hold that some errors will never be harmless because Adata is
insufficient to conduct a meaningful harmless error analysis@). 








Although difficult, we attempt to evaluate harm
here by addressing the considerations enumerated by the court of criminal
appeals in Rich.  See 160
S.W.3d at 577-78.  We first consider the
character of the error.  Tijerina was
prevented from asking a proper commitment question during voir dire and was
thereby prevented from challenging for cause any jurors harboring an automatic
disbelief of testimony given by a convicted felonCherself.  See Tex.
Code Crim. Proc. Ann. art. 35.16(a)(9); Harris, 122 S.W.3d at
880.  Tijerina was prevented from
learning whether potential jurors could impartially judge the credibility of a
convicted felon witnessCherself.  See Ladd, 3 S.W.3d at 560.  Tijerina had a right to testify on her own
behalf.  See Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon 2005) (AAny defendant in a criminal
action shall be permitted to testify in his own behalf . . . .@ ).  Tijerina also had a constitutional right to
an impartial jury.  See U.S. Const. amend. VI; Tex. Const.  art. I, ' 10; see
also Sanchez, 165 S.W.3d at 710-11 (noting that the first purpose of voir
dire is to establish a basis for a challenge for cause when a potential juror
is legally disqualified or is biased or prejudiced for or against one of the
parties or the relevant law); Gonzales, 2 S.W.3d at 603 (APart of
[the right to an impartial jury and assistance of counsel] is an adequate voir
dire to identify unqualified jurors.@).  But the trial court=s error
prevented Tijerina from obtaining information she was entitled to in order to
make an intelligent decision on whether to exercise her right to testify in her
own behalf because she did not know whether the jurors would automatically
disbelieve her testimony based on her prior felony convictions.








The burden to demonstrate harm does not rest on
Tijerina or the State; it is our responsibility as an appellate court to review
the record and assess harm.  See
Johnson v. State, 43 S.W.3d 1, 4-6 (Tex. Crim. App. 2001); see also
Ovalle v. State, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000).  But we cannot predict how defense counsel
would have conducted the trial differently had he not been precluded from
asking the proper voir dire question at issue here.  See Gonzales, 2 S.W.3d at 606.  Thus, the character of the error was to
affect Tijerina=s substantial right to testify
in her own defense.








The State argues in its motion for rehearing that
because Tijerina did not offer any evidence of what her testimony would have
been, we cannot speculate about what her testimony would have been.  See Jack v. State, 149 S.W.3d 119, 121
n.1 (Tex. Crim. App. 2004) (noting that an appellate court may not consider
factual assertions not in evidence).  The
State also argues in its motion for rehearing that even if we speculate about
testimony Tijerina Acould have
offered,@ her
testimony would have been legally inconsequential.  [Emphasis added.]  We agree that we may not speculate as to what
Tijerina=s
testimony would have been.  But the harm
from the trial court=s error is that Tijerina was
precluded from making an intelligent decision about whether to exercise the
substantial right that she possesses to testify on her own behalf in front of
an impartial jury no matter what her testimony would have been.  See Jones v. State, 982 S.W.2d 386,
393 (Tex. Crim. App. 1998) (noting that A[t]he
defendant's only substantial right [in the context of jury selection] is that
the jurors who do serve be qualified,@ not to
have a particular person serve on a jury); accord Blue v. State, 41
S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality opinion) (holding judge=s
unobjected-to comments during voir dire vitiated the impartiality of the jury
and required reversal).[3]
An offer of proof of Tijerina=s
testimony, had she testified, would have been helpful to our harm analysis, but
it would have been but one relevant factor. 
See Jones, 982 S.W.2d at 394 (holding error in prohibiting voir
dire questioning about defense of necessity harmful even after determining that
defendant=s offer of proof failed to prove
defense of necessity). 








Turning to the other factors, they mostly either
weigh neutrally or weigh slightly against a finding of harm in this case.  The testimony admitted for the jury=s
consideration included testimony from the police officers who stopped and
eventually arrested Tijerina and from the forensic scientist who tested the
substances that the officers found in the baggies.  Additionally, James William Spear testified
for the defense that on the day of Tijerina=s
arrest, he saw Tijerina loan money to Canada and saw Canada purchase drugs with
that money when Tijerina was out of the room. 
The physical evidence admitted for the jury=s
consideration consisted of the confiscated drugs and the warrants for Tijerina=s
arrest.[4]  The evidence supporting the jury=s
verdict included Officer Howard=s
testimony that he saw Tijerina remove a day planner, which was later discovered
to contain methamphetamine and a photocopy of Tijerina=s driver=s
license, from a purse sitting beside her and place it in the back seat.  As the State points out, there is nothing in
the record to contradict the State=s
evidence.[5]  








The jury instructions add nothing to our harm
analysis one way or the other.  Any
instructions that the jury could not consider the fact that Tijerina did not
testify are irrelevant to a harm analysis of the trial court=s error
in prohibiting Tijerina from learning whether any potential jurors would
automatically disbelieve her testimony if she testified.  The voir dire as a whole did not remedy the
informational void concerning whether potential jurors would automatically
disbelieve a convicted felon=s
testimony.  The State points out that
comments made to the venire members during voir dire made clear that the
potential jurors were to be impartial to witnesses.[6]  Although it is positive, and certainly
appropriate, that the potential jurors were provided with this information, the
comments made by the trial court and by the State did not help Tijerina
determine whether a potential juror could apply these principles or should be
challenged for cause because he or she could not apply the principles and would
automatically disbelieve the testimony of a convicted felon despite hearing the
court=s and
the State=s comments.  See Pieringer v. State, 139 S.W.3d
713, 718-19 (Tex. App.CFort Worth 2004, no pet.).  Finally, the State mentioned in closing
argument that the evidence was Auncontroverted@ that
Tijerina took the day planner out of her purse, but it did not otherwise
emphasize the lack of testimony by Tijerina. 








We recognize that when a trial court errs by
prohibiting defense counsel from asking a proper commitment question, the error
usually will not affect the defendant=s
substantial rights.  See, e.g.,
Burkett v. State, 179 S.W.3d 18, 33 (Tex. App.CSan
Antonio 2005, no pet.) (holding error in preventing defense from asking how
likely it would be that a person is guilty of DWI if he or she were arrested
for DWI did not affect appellant=s
substantial rights where trial court and defense counsel asked potential jurors
questions about burden of proof and presumption of innocence); White v.
State, No. 07-03-00515-CR, 2005 WL 2495445, at *3 (Tex. App.CAmarillo
Oct. 7, 2005, pet. ref=d) (mem. op.) (not designated
for publication) (holding that any error in prohibiting defense counsel from
asking proper commitment question about self-defense from sexual assault did
not affect appellant=s substantial rights because,
among other things, defense counsel was permitted to ask questions about
self-defense in general).  But here, the
particular commitment question asked potential jurors whether they would
automatically disbelieve a witness if she had been convicted of a felony, a
question that if asked, could have given Tijerina a basis to exercise her right
to challenge jurors for cause and would have given her information useful to
determine whether to exercise her right to testify on her own behalf.  Here, whether jurors could believe the
testimony of a convicted felon was an issue in the case.  Here, the trial court did not ask
veniremembers similar questions.  Cf.
Burkett, 179 S.W.3d at 33.  And
here, defense counsel was not able to obtain the same information from a
different question.  Cf. White,
2005 WL 2495445, at *3.  








We conclude that although many of the Rich
factors weigh neutrally or slightly in favor of no harm to Tijerina, in the
context of the entire case against Tijerina the character of the trial court=s error
in prohibiting defense counsel from asking this question is such that it had a
significant or injurious effect on the jury=s
verdict so that Tijerina=s substantial rightsCspecifically,
her rights to a fair and impartial jury and to make an intelligent decision on
whether to exercise her right to testify in her own behalfCwere
affected.  See McMurrough v. State,
995 S.W.2d 944, 948 (Tex. App.CFort Worth
1999, no pet.); accord Blue, 41 S.W.3d at 132 (holding error
during voir dire that vitiated the impartiality of the jury to be reversible
error).  We sustain Tijerina=s first
point.

IV. Conclusion

Having sustained Tijerina=s first
point, we need not address her remaining points.[7]  We reverse the trial court=s
judgment and remand the case for a new trial.

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: July 13, 2006











[1]In Lydia, the
victim was a convicted felon, so the State wanted to know whether potential
jurors would automatically dismiss a witness=s (i.e., the victim=s) testimony because of
the witness=s criminal history.  117 S.W.3d at 905.  





[2]Tijerina argues that Rich
does not mandate a Rule 44.2(b) harm analysis and urges us to analyze harm
under Rule 44.2(a) because the court of criminal appeals in Rich stated,
AThe Court of Appeals
found this to be non‑constitutional error and applied Rule 44.2(b).  Rich does not contest this conclusion, so we
assume that to be the proper rule.@  160
S.W.3d at 577 (emphasis added).  More
recently, however, in Sanchez v. State, the court of criminal appeals
interpreted its Rich opinion as requiring a Rule 44.2(b) harm
analysis.  165 S.W.3d 707, 713 n.16 (Tex.
Crim. App. 2005) (interpreting Rich to hold that ARule 44.2(b) . . . is
applicable when voir dire is conducted in a group setting and defendant is
prohibited from asking a proper question of the panel@).  Thus, following Rich and Sanchez,
we will conduct a Rule 44.2(b) harm analysis. 
But because we conclude that the error here was harmful under our Rule
44.2(b) analysis, we note that we would likewise find it harmful under the less
stringent Rule 44.2(a) harm analysis.





[3]Because Blue is a
plurality opinion, it is not binding precedent. 
See Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App.
1999).    





[4]The jury did not hear
evidence of Tijerina=s previous convictions,
although Spear alluded to the fact by stating, A[Tijerina] might have did
amphetamines at one time and she did get in trouble for it.@ 





[5]The only evidence
Tijerina presented that remotely contradicted the State=s evidence was Spear=s testimony that he saw
Canada purchase drugs and that he remembered Tijerina=s purse on the
passenger-side floorboard.  Officer
Howard testified that a second purse lying in the passenger-side floorboard did
not contain any illegal substances.  





[6]During voir dire, the
trial court instructed the venire members that they had discretion to believe
or not to believe the witnesses after evaluating their credibility, and the
State explained that each witness was to start out with the same level of
credibility.





[7]See Tex.
R. App. P.
47.1.