COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-248-CR

 

 

JOHN EMENHISER                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

          OPINION
ON PETITION FOR DISCRETIONARY REVIEW

 

                                              ------------

After reviewing Appellant=s petition for discretionary review, we modify our opinion and
judgment in this appeal.  See Tex. R. App. P. 50.  We withdraw our opinion and judgment of April
6, 2006, and substitute the following.

I.                  
Introduction








            A jury convicted Appellant John Paul Emenhiser of two
counts of indecency with a child, one count of aggravated sexual assault of a
child, and one count of sexual performance by a child and assessed punishment
at a total of 149 years=
confinement.  In six points, Appellant
argues that the trial court erred by quashing a subpoena, by barring a witness
who violated Athe Rule@ from testifying, by failing to
suppress certain evidence, and by refusing Appellant=s
challenge to a venireperson.  Appellant
also challenges the legal and factual sufficiency of the evidence to support
his convictions for sexual performance by a child and indecency with a
child.  We affirm.

II.               
Factual and
procedural background








            The complainant in this case is K.R., who was thirteen
years old at the time of trial.  K.R.
testified as follows:  Appellant was her
school bus driver when she was in the fourth and fifth grades.  Appellant photographed K.R. and other
children on the bus with disposable cameras and, later, a digital camera that
she described as Asmall and
silver.@  On one occasion, Appellant told K.R. to sit
on his lap on the school bus.  She sat on
his lap for five to ten minutes while Appellant Awould
push up his private part up toward me . . . . 
It was hard.  . . .  And then later on, he, like, whispered, >Touch it,=
I guess, and he, like, touched my hand . . . and put it on there . . .
[o]n top of his clothes.@  On a later occasion,[1]
K.R. was walking home from a friend=s
house when she saw Appellant sitting on his motorcycle alone in a parking
lot.  Appellant gave K.R. a ride to her
home on his motorcycle.  When they
reached her house, K.R. offered Appellant a glass of water or lemonade.  Appellant went into the house with K.R. and
sat on a couch while drinking the glass of water.  K.R. sat at the opposite end of the couch,
and the two conversed and watched television. After some time passed, Appellant
moved to K.R.=s end of
the couch and put his hand on her leg. 
Eventually, K.R. testified, Appellant removed her clothes and his
clothes, penetrated her vagina with his fingers, and had sexual intercourse
with her.  During the sexual assault,
Appellant stopped to photograph K.R.=s
face, breasts, and genitals with a digital camera.  After the assault, Appellant told K.R. not to
tell anyone what had happened or he would Amake
sure [her friend=s] family
pays.@ 








When Appellant was evicted from his apartment in
August 2003, police found child pornography in the form of conventional and
digital photographs  among his
possessions.  They also found over a
hundred photographs of K.R. in Appellant=s
apartment and during a later search of a storage unit leased for Appellant by
his sister.  They did not, however, find
any photographs of K.R. nude.  Police
interviewed K.R. several times, and she eventually related the incidents
described above. 

A grand jury indicted Appellant for indecency with
a child arising out of the school bus incident and indecency with a child,
aggravated sexual assault, and sexual performance by a child arising from the
later incident.  A jury convicted him on
all counts and assessed punishment of imprisonment for ten years for the first
indecency count, twenty years for the second indecency count, ninety-nine years
for the aggravated-sexual-assault count, and twenty years for the
sexual-performance-by-a-child count.  The
trial court entered judgment accordingly and ordered Appellant to serve his
sentences consecutively.  Appellant filed
this appeal.

III.            
Discussion

            a)         Subpoena for student names and addresses








            In his first point, Appellant argues that the trial court
violated his Sixth Amendment right to compulsory process when it quashed a
subpoena that directed the Denton ISD to provide Appellant with the names and
addresses of every student in K.R.=s
middle school class at the time of trial. 
Appellant argues that the information requested by the subpoena would
have allowed him to interview K.R.=s
classmates, some of whom might have been able to testify about K.R.=s truthfulness.

Criminal defendants have a right to compulsory
process for obtaining witnesses.  U.S. Const. amend. VI; Tex. Const. art. I, ' 10. But the right to compulsory
process is not absolute.  Defendants have
the right to secure the attendance of witnesses whose testimony would be both
material and favorable to the defense.  See
Coleman v. State, 966 S.W.2d 525, 527‑28 (Tex. Crim. App. 1998).  To exercise this right, the defendant must
make a plausible showing to the trial court, by sworn evidence or agreed facts,
that the witness=s
testimony would be both material and favorable to the defense.  Id. at 528.  Counsel=s
mere belief that a witness would support the defense=s
case is insufficient to establish materiality. 
Castillo v. State, 901 S.W.2d 550, 553 (Tex. App.CEl Paso 1995, pet. ref=d) (citing Hardin v. State, 471
S.W.2d 60, 62 (Tex. Crim App. 1971)). 
Moreover, the right to compulsory process is dependent upon an accused=s initiative, and the nature of the
right requires that its effective use be preceded by Adeliberate
planning and affirmative conduct@
by the defendant.  Rodriguez v. State,
90 S.W.3d 340, 358 (Tex. App.CEl
Paso 2001, pet. ref=d)
(quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 653‑54
(1988)).








We review a complaint that the trial court
improperly quashed a subpoena for an abuse of discretion.  Drew v. State, 743 S.W.2d 207, 225
n.11 (Tex. Crim. App. 1987).  Likewise,
questions regarding limitations on the right to compulsory process are within the
trial court=s
discretion.  Rodriguez, 90 S.W.3d
at 358.

The subpoena in question requested the names and
addresses of Aall
students currently in the same class as@
K.R.  The subpoena was issued on May 14,
2004, and served on Barbara Fischer, the principal of K.R.=s middle school, on the morning of May
18Cthe day the jury began to hear evidenceCand required Fischer to appear with the
records at 1:30 p.m. that same day.

Denton ISD filed a motion to quash the subpoena,
citing federal law that protects education records from disclosure absent
permission from the parents of the affected students and noting that there was
not enough time to comply with the subpoena. 
The trial court briefly recessed the trial to conduct a hearing on the
motion to quash on May 18.  Fischer
testified that collecting the information requested by Appellant would take
about four days because the information would have to be compiled by hand.   She testified that she would need additional
time to contact the parents of the affected children either by mail or phone
and secure their permission to disclose the requested information. 








Appellant=s
counsel argued that he needed to know who was in K.R.=s
class so that he could interview those students to see if any could express an
opinion that K.R. was not a truthful person. 
Counsel noted that he had previously obtained the Denton ISD bus roster
by subpoena and said that it was Athe
most valuable piece of evidence that we have had@
because he was able to interview the students who rode K.R.=s bus. 
Counsel eventually offered to restrict the scope of the subpoena to the
names and addresses of students in K.R.=s
first period class.  Describing the
subpoena as a Afishing
expedition,@ the
trial court granted Denton ISD=s
motion to quash. 

This case is somewhat unusual because Appellant
did not intend to call the target of the quashed subpoena, Fischer, as a
witness at trial.  Rather, Appellant hoped
that the information Fischer would provide might lead to the discovery of
witnesses whom Appellant could in turn subpoena to testify.  In this sense, our case is one step removed
from the typical case where a defendant complains that he was denied his compulsory
process right because the trial court quashed the subpoena for a witness whom
the defendant intended to call to testify at trial.  See, e.g., Coleman, 966 S.W.2d at 526
(concerning quashed subpoenas for news reporters whom Coleman intended to call
as witnesses).








Under the circumstances presented by this case, we
hold that the trial court did not abuse its discretion by quashing the
subpoena.  The record reflects that
Fischer would need several days simply to collect the information requested by
the subpoena plus some amount of time to contact the parents of the affected
students, and Appellant would obviously need additional time to interview the
students in the hope of finding one or more who would testify that K.R. was
untruthful.  By waiting until the time of
trial to serve a subpoena that would have substantially delayed the trial,
Appellant did not exercise the Adeliberate
planning and affirmative conduct@
required to trigger the right to compulsory process.  See Rodriguez, 90 S.W.3d at 358
(holding that trial court did not abuse its discretion by quashing subpoena for
school records when appellant waited until the time of trial to complain that
subpoena had not been served, and compliance with subpoena would have delayed
trial).  Further, Appellant made no
showing by sworn facts or agreed evidence that the witness=s testimony would be material and
favorable to the defense.  See Coleman,
966 S.W.2d at 528.  We overrule Appellant=s first point.

A.               
Exclusion of
witness who violated Athe Rule@








            In his second point, Appellant argues that the trial
court erred by excluding the testimony of his court-appointed investigator, Jay
Bailey, after Bailey repeatedly violated the rule of sequestration of witnesses
(Athe Rule@).  See Tex. R. Evid. 614.

Texas Rule of Evidence 614 provides in relevant part, AAt the request of
a party the court shall order witnesses excluded so that they cannot hear the
testimony of other witnesses, and it may make the order of its own motion.@  Tex.
R. Evid. 614.  The purpose of
placing a witness under the Rule is to Aprevent the
testimony of one witness from influencing the testimony of another.@ Cook v. State,
30 Tex. Ct. App. 607, 612, 18 S.W. 412, 412 (1892); see also Archer v. State,
703 S.W.2d 664, 666 (Tex. Crim. App. 1986); Hougham v. State, 659 S.W.2d
410, 414 (Tex. Crim. App. 1983) (Clinton, J., concurring).  As a general rule, a witness=s testimony cannot
be excluded solely on the grounds that the witness violated the Rule, Aalthough the right
to exclude under particular circumstances may be supported as within the sound
discretion of the trial court.@  Webb v. State, 766 S.W.2d 236, 241
(Tex. Crim. App. 1989) (quoting Holder v. United States, 150 U.S. 91,
92, 14 S. Ct. 10, 10 (1893)).








In determining whether to disqualify a witness who has
violated the Rule, the trial court must balance the interests of the State and
the accused, consider alternative sanctions, and consider the benefit and
detriment arising from a disqualification in light of the nature and weight of
the testimony to be offered.  Id.
at 244.  We review the trial court=s decision to
exclude a witness who has violated the rule for an abuse of discretion by
applying a two-prong analysis:

A reviewing court will
determine:  (1) if the rule was violated
and the witness disqualified, were there particular circumstances, other than
the mere fact of the violation, which would tend to show the defendant or his
counsel consented, procured or otherwise had knowledge of the witness=s presence in the courtroom,
together with knowledge of the content of that witness=s testimony; and (2) if no
particular circumstances existed to justify disqualification, was the excluded
testimony crucial to the defense. In applying the test to the facts of this
case, we are guided by balancing the benefit of upholding the ruling against
the detriment or cost to appellant arising from that ruling, with particular
concern as to the circumstances surrounding the trial court=s decision to disqualify the
witness.

 

Id. at 245; see also Davis v. State, 872 S.W.2d
743, 746 (Tex. Crim. App. 1994).

In this case, the trial court
appointed Jay Bailey to serve as Appellant=s investigator.  Appellant
invoked the Rule at the beginning of trial. 
Near the end of the guilt-innocence phase of trial, Appellant=s counsel stated that he intended to call Bailey as a witness.  The State=s attorney noted that Bailey had violated the Rule.  The trial court took judicial notice of the
fact that the trial judge had seen Bailey in the courtroom during
testimony.  Appellant=s counsel argued that Bailey=s presence in the courtroom was necessary because he was helping
counsel marshal his witnesses. 













Appellant made a bill of
exceptions by examining Bailey outside the presence of the jury.  Bailey testified that he was in the courtroom
approximately six times after Appellant invoked the Rule.  He entered the courtroom to notify counsel
that witnesses had arrived or that he had Amade phone calls for witnesses@ and on one occasion to borrow counsel=s cell phone.  Bailey said that
he heard one line of testimony and did not even see who was testifying at the
time.  He stated that he heard no
testimony concerning the subject of his own testimony.  He expected to testify about the distance
between the mobile home where K.R. alleged the sexual assault took place and
the neighboring mobile home; about photographs he took of Appellant=s body showing obvious and extensive scarring; about photographs of a
school bus driver=s seat and
of Appellant=s stomach protruding
over his lap when seated;[2]
that he had an email from the manufacturer of the digital camera found in
Appellant=s possession
stating that the model of camera in question was not manufactured before
November 2002; and that Walmart employees told him that the local Walmart did
not sell the camera until November 2002. 
On cross-examination, Bailey admitted that he did not know how the
mobile homes appeared when the sexual assault allegedly took place and that he
did not know whether the photographs of Appellant=s scarring and stomach accurately reflected Appellant=s appearance at the times of the alleged offenses.  He also admitted that he was told during
trial by one of the State=s
investigators that he should leave the courtroom if he expected to testify. 

The trial court ultimately
barred Bailey from testifying because he violated the Rule.  Appellant orally moved the trial court to
reconsider and Acome up with
some less drastic alternative than actually barring the witness.@  The trial court denied the
motion. 

In this case, Bailey
committed a technical violation of the Rule, but the violation was slight.  Bailey stated that he heard but one line of
testimony and that one line did not concern the subject of his own testimony,
making remote the possibility that his testimony would be influenced by the
testimony of another.  Under these
particular circumstances, disqualification was not justified.  We therefore apply the second prong of the Webb
test and determine whether the excluded evidence was crucial to the defense.

The State argues that Bailey=s testimony was not crucial to the defense for two reasons: his
testimony was inadmissible, and it would not negatively affect the probative
value of K.R.=s
testimony.  We agree with the State=s analysis.








Bailey=s testimony and photographs about the mobile homes had little or no
probative value as to the distance between the homes at the time of the offense
because Bailey was unable to testify about the appearance and location of the
homes at the time of the offense, and no other witness offered such
testimony.  Moreover, the distance
between the homes had marginal evidentiary value at most; there was no evidence
that K.R. screamed or did anything else that would have alerted nearby
neighbors.  Likewise, the photographs of
Appellant=s scars and
protruding stomach had little or no probative value as to his appearance at the
time of the offense.  Appellant argues
that his medical records permit a reasonable inference that the scars depicted
in the photographs existed at the time of the offense, but the medical records
for the relevant time frame merely state that Appellant was treated for a boil
on his groin in January 2002.  Finally,
Bailey=s testimony about the email he received from the camera=s manufacturer and his discussion with Walmart employees was
inadmissible hearsay to which no hearsay exception applies.  See Tex.
R. Evid. 802, 803, 902.

We hold that Bailey=s testimony was not crucial to the defense.  Therefore, we cannot say that the trial court
abused its discretion by excluding Bailey=s testimony, and we overrule Appellant=s second point.

B.                
Sufficiency of
search warrant affidavit








            In his first supplemental point, Appellant argues that
the trial court erred by failing to suppress evidence seized from a rented
storage unit under a search warrant because the affidavit
supporting the warrant failed to establish probable cause.

 

1.                 
Standard of
review

        A magistrate=s determination to issue a warrant is subject to a deferential
standard of review.  Swearingen v.
State, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004).  The task of the issuing magistrate is to make
a practical, common sense decision whether, given all the circumstances set
forth in the affidavit before him, there is a fair probability that contraband
or evidence of a crime will be found in a particular place.  Johnson v. State, 803 S.W.2d 272, 288
(Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991), overruled
on other grounds, Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim.
App. 1991).  The magistrate=s determination of probable cause will be sustained if the magistrate
had a substantial basis for concluding that a search would uncover evidence of
wrongdoing.  Swearingen, 143
S.W.3d at 811; State v. Delagarza, 158 S.W.3d 25, 26 (Tex. App.CAustin 2005, no pet.).

2.                 
The affidavit 








            The search warrant affidavit was sworn by Shane Kizer, a
Denton Police Department child abuse investigator, on August 21, 2003.  Kizer identified the search premises as a ten-foot
by ten-foot storage unit at a storage facility in Denton and alleged that the
storage room contained child pornography stored on, among other things,
computers, computer hardware, and various forms of electronic media.  He stated that the storage room was
controlled by Appellant and his sister.

As the basis for probable cause, Kizer stated:

Det.
Kizer received a Possession of Child Pornography case to investigate.  On 08/19/03 Denton County Constable Justin
Yates responded to 620 Texas to serve a Writ of Possession at 620 Texas #8
Denton, Denton County, Tx.  Yates advised
that upon his arrival he was advised of some potentially Illegal Pornography
involving Children.  Yates advised that
after entering the apartment he found a substantial amount of Child
Pornography.  Yates[>s] agency notified the Denton Police
Department with the information of what he found.

 

Officers
collected numerous computer disks, and photographs of children engaged in sex
acts, nude photos of children printed from a computer printer, and photos of
children posed in an inappropriate manner. 
Most of the children depicted are well under the age of seventeen years
of age.  Officers collected the items as
they were being removed as trash from the above mentioned apartment.  The items were removed from the apartment by
workers acting as agents for the property owner.  620 Texas #8 was leased to the suspect: John
Paul Emenhiser and no other person.

 








Information
collected from the apartment management showed John to have been employed by
Denton Independent School District.  Det.
Miller checked with Assistant Director of Transportation for DISD Doug Becker
and was told that John drove a school bus for the district but is no longer
employed by DISD.  Doug advised that John
was fired after a complaint by resident . . . [who] said
that John was chatting on the internet with his daughter.  Doug said they terminated his employment
shortly thereafter.

 

Several
photos of elementary and middle school children were among the material found
at John=s
apartment.  Some of the photos were of
children at the playground of McNair Elementary School in Denton, TX.  Other photos were of children on a school
bus.  School Resource Officer Bobby Ray
was able to identify several of the students in the photos as Denton middle
school students.

 

Det.
Kizer was told by a resident living in another apartment who wished to remain
anonymous that John worked at a plant nursery in Sanger, TX and once drove a
work vehicle home.  He described the
vehicle as a white cargo van.  Det.
Miller was aware of a nursery on Cowling Road in Sanger that uses cargo vans to
ship their products.

 

Det.
Kizer and Miller contacted representative, Klayton Hartley, of Vast Inc. in
Sanger.  He advised that John Emenhiser
was employed with them but let go in June of 2003.  He advised that John had given a sister=s name, Darlene Guillory, as a contact
person for him with a phone number of . . . . 
Det. Kizer did a reverse search on the number.  It came back to Darlene Guillory with an
address of 302 Eagle Mountain Dr. Lake Dallas, Texas.

 








Det.
Kizer phoned the owners of Frame Street Storage, Al and Jane Glover, at 816
Frame St. in Denton, TX.  They advised
that Darlene had rented a 10=
X 10= storage
room on their property for her brother John Emenhiser.  Al said Darlene put the storage room in her
name because John did not have a picture ID with him.  They both stated that Darlene and John
indicated that John was now living at Darlene=s
residence. . . . Al and Jane said Darlene and John leased the storage unit on
August 12, 2003.  They both said Darlene
has not been back since.  They said
[that] John has been back a number of times moving property into the storage
unit.  Al said John was at the storage
unit as recent as August 21, 2003 around 8 AM.

 

3.                 
Analysis



From Kizer=s
affidavit, the magistrate who issued the warrant could conclude that Appellant
lost his job in June 2003, moved in with his sister, rented a storage unit,
moved Aproperty@ into the storage unit, and was
forcibly evicted from his apartment shortly thereafter.  During the eviction, a constable found child
pornography in Appellant=s
apartment, including computer-printed photographs.  Viewing Kizer=s
affidavit in a practical, common-sense light, the magistrate could have
concluded that Appellant transferred property from his apartment to the storage
unit in conjunction with his move from the apartment
to his sister=s house and
that the Aproperty@ included the computer used to print the photographs and create or
access the computer disks found in Appellant=s apartment.  Such computer
equipment was among the items specifically identified by Kizer=s affidavit as probably located in the storage unit.  We hold that Kizer=s affidavit provided the magistrate with a substantial basis for
concluding that a search of the storage unit would uncover evidence of
wrongdoing.













Appellant draws parallels
between the affidavit in this case and the affidavit in Hass v. State
and argues that Kizer=s affidavit,
like the one in Hass, failed to state probable cause.  See Hass v. State, 790 S.W.2d
609 (Tex. Crim. App. 1990).  In Hass,
one police officer observed the defendant leave a mini-warehouse with a box,
put the box in his car, and drive away.  Id.
at 610.  Police stopped the car a short
distance away, smelled a chemical associated with the production of
amphetamine, and found a box containing amphetamine and syringes.  Id. 
Police sought a search warrant for the mini-warehouse.  Id. 
A second police officerCwho had not seen the defendant enter or leave the mini-warehouseCmade a probable cause affidavit in which he swore that he had seen
the defendant enter the mini-warehouse and exit the warehouse with an Aunknown item@ which he
put in his car.  Id. at 611.  The magistrate issued a search warrant for
the mini-warehouse, where police found a controlled substance.  Id. at 610.  At the hearing on the defendant=s motion to suppress, the officer who swore the affidavit admitted
that he did not see the defendant leave the warehouse with the box containing
amphetamine.  Id. at 611.  The court of criminal appeals disregarded the
untrue statements in the affidavit and reviewed the remainder.  Id. at 612.  In essence, the reformed affidavit simply
stated that police stopped defendant=s car near the mini-warehouse and found amphetamine in a box in the
car.  Id.  There was nothing in the reformed affidavit
to connect the amphetamine and syringes to the warehouse:  AThe mere fact that suspects had just come from a mini-warehouse and
possessed alleged illegal drugs in their automobile does not, without
additional facts to link the drugs to the warehouse, justify a search of the
warehouse for additional controlled substances.@  Id.  The court reversed the defendant=s conviction and remanded the case to the trial court.  Id.

Our case is distinguishable
from Hass.  First, Appellant does
not argue, and nothing in the record suggests, that any part of Kizer=s affidavit was untruthful; thus, unlike the Hass court, we
review the entire affidavit.  Second, the
affidavit in this case clearly links Appellant with the storage unit, unlike
the affidavit in Hass, which did not link the defendant with the
mini-warehouse other than by its proximity to the scene of his arrest.  Third, Kizer=s affidavit reflected Aadditional facts@ to link the
child pornography found in Appellant=s apartment with his storage unit. 
The facts that Appellant was being evicted from his apartment, was
moving in with his sister, had rented the storage unit, and was moving Aproperty@ into the
storage unit, and that child pornography was found among the property remaining
in his apartmentCall within a
narrow time frameCform a
substantial basis for the magistrate to find probable cause to believe that
Appellant had moved child pornography from his apartment to the storage
unit.  For these reasons, we reject
Appellant=s argument
that similarities between this case and Hass compel the same outcome.








We hold that the trial court
did not err by denying Appellant=s motion to suppress.  We
overrule Appellant=s first
supplemental point.

C.                
Challenge for
cause

            In his second supplemental point, Appellant argues that
the trial court erred by denying Appellant=s
challenge for cause of veniremember Richard Huffman, who vacillated about
whether he could consider probation as a punishment.

We review a trial court=s
determination of a challenge for cause for abuse of discretion.  Cantu v. State, 842 S.W.2d 667, 682
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993).  In the case of a
vacillating veniremember, we defer to the decision of the trial court, which
was in a position to actually see and hear the veniremember in the context of
the voir dire.  Granados v. State,
85 S.W.3d 217, 232-33 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 927
(2003).  Such a ruling will not be
disturbed unless there is no adequate basis in the record to support the
ruling.  Vuong v. State, 830
S.W.2d 929, 944 (Tex. Crim. App.), cert. denied, 506 U.S. 997
(1992).  Elements such as demeanor and
tone of voice, among other things, are important factors in conveying the
precise message intended by the veniremember. 
Mooney v. State, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991).  








When questioned by the State
during voir dire, veniremember Huffman stated that he could consider the full
range of punishment from probation to life imprisonment.  When defense counsel asked a similar
question, Huffman stated, @I think I would have a difficult time with probation, too.  I would not go for probation. . . . I would
not consider it if he was guilty.@  Appellant challenged Huffman
for cause; the trial court denied the challenge.  Huffman had previously asked to approach the
bench.  Immediately after denying
Appellant=s challenge,
the trial court called Huffman to the bench and questioned him outside the
presence of the other veniremembers. 
When the trial court instructed Huffman to disregard hypothetical
situations posed by the State=s and Appellant=s attorneys,
Huffman stated, AI could do
probation. . . . I would consider it.@ 

After both sides made their
peremptory strikes and the trial court seated the jury, Appellant=s counsel stated that he used peremptory strikes on Huffman and
another veniremember and requested two additional strikes for the purpose of
striking two objectionable veniremembers who were seated on the jury.  The trial court denied his request. 








Huffman was a vacillating
veniremember.  While he did say that he
could not consider probation in response to Appellant=s questioning, he also said that he could consider probation in
response to the State=s
questioning and, more importantly, affirmed that he could consider probation
when the trial court told him to disregard hypothetical questions posed by
counsel.  We therefore hold that the
record reflects a substantial basis for the trial court=s denial of Appellant=s challenge for cause.

Appellant also contends that
the trial court erred by refusing to allow counsel to ask a specific question
of Huffman and other veniremembers. 
Counsel requested the trial court to ask Aon Mr. Huffman, if the issue comes up again, what is it that he
observed in the courtroom that helped him reach the conclusion that he would
not consider probation. . . . [I]t would be our position [that] if they observe
something about the Defendant that led to their conclusion that they couldn=t reach - - couldn=t give probation, then that would be a proper question to ask them.@  The trial court replied, AIt would be.  And while you were
asking them, you could have asked [them] that, and that would be good for your
- - for your peremptory challenges.  But
it is not a challenge for cause in my opinion. 
So I - - I don=t know that
I will be asking that question.@  The trial court did not ask
the question of Huffman or any other veniremember.








A trial court has broad
discretion over the process of selecting a jury. Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge v. State, 762 S.W.2d 146,
167 (Tex. Crim. App. 1998), cert. denied, 489 U.S. 1040 (1989); Lydia
v. State, 117 S.W.3d 902, 904 (Tex. App.CFort Worth 2003, pet. ref=d).  We leave to the trial court=s discretion the propriety of a particular question.  Sells v. State, 121 S.W.3d 748, 755 (Tex.
Crim. App.), cert. denied, 540 U.S. 986 (2003); Barajas, 93
S.W.3d at 38; Allridge, 762 S.W.2d at 167; Lydia, 117 S.W.3d at
904.

Appellant states generally
that the trial court erred by refusing to ask his proposed question, but he
cites no authority for the argument and does not explain how the trial court
abused its broad discretion.  Our own
review of the record does not reveal an abuse of discretion.  We therefore hold that the trial court did
not abuse its discretion by refusing to ask Huffman the question proposed by
Appellant.

We overrule Appellant=s second supplemental point.

D.               
Legal and
factual sufficiency: sexual performance by a child








            In his third supplemental point, Appellant argues that
the evidence was legally[3]
and factually insufficient to convict Appellant of sexual performance by a
child.  Appellant argues that the
evidence is factually insufficient to support his conviction because K.R. made
no outcry until a year and a half after the sexual assault; police found photos
of K.R. among Appellant=s
possessions, but none depicted K.R. in a state of nudity; and if photographs of
K.R. in a state of nudity existed, they would have been found in Appellant=s meticulous computer filing system. 

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  We are to give
deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.








Section 43.25 of the penal
code defines the offense of sexual performance by a child.  Tex.
Penal Code Ann. ' 43.25
(Vernon Supp. 2005).  AA person commits an offense if, knowing the character and conduct
thereof, he employs, authorizes, or induces a child younger than 18 years of
age to engage in sexual conduct or a sexual performance.@  Id. ' 43.25(b).  ASexual conduct@ means,
among other things, lewd exhibition of the genitals or any portion of the
female breast below the top of the areola. 
Id. '
(a)(2).  The legislature has not defined Alewd exhibition.@








The fact that police found no
photographs of K.R.=s breasts or
genitals among Appellant=s
possessions is not relevant to the crime for which he was indicted and
convicted.  Count IV of the indictment
alleged that Appellant intentionally or knowingly induced K.R. to engage in a
lewd exhibition of her genitals. 
Recording the lewd exhibition of a minor=s genitals on film or other media is not an element of the offense.[4]  We also note that nothing in section 43.25
suggests that the exhibition induced by the accused must be for the benefit of
a third person as opposed to the accused himself.  Therefore, whether Appellant photographed or
attempted to photograph K.R.=s genitals, and the fact that police found no photographs of her
genitals, is not relevant to a sufficiency analysis. 

With regard to the passage of
time between the sexual conduct and K.R.=s outcry, the implication of Appellant=s argument is that the delay suggests that K.R. fabricated the
accusation.  We defer to the jury=s determination and evaluation of K.R.=s credibility and demeanor. 
K.R. testified in detail about the sexual assault and the manner in
which she was posed when Appellant photographed or appeared to photograph her
nude body.  Considering all of the
evidence in a neutral light, the jury was 
rationally justified in finding beyond a reasonable doubt that Appellant
knowingly or intentionally induced K.R. to engage in a lewd exhibition of her
genitals with knowledge of the character and conduct of that exhibition.

Reviewing the evidence in the
light most favorable to the verdict, we hold that it is legally sufficient to
support the verdict.  We hold that the
evidence, viewed in a neutral light, is also factually sufficient to support
the jury=s verdict.  We therefore
overrule Appellant=s third
supplemental point.

E.                
Legal and
factual sufficiency: indecency with a child








            In his fourth supplemental point, Appellant argues that
the evidence was legally[5]
and factually insufficient to support his conviction for indecency with a child
arising from the incident when he held K.R. on his lap on the school bus.      A
person commits the offense of indecency with a child if, with a child younger
than seventeen years and not the person=s
spouse, the person engages in sexual contact with the child.  Tex.
Penal Code Ann. ' 21.11(a)(1) (Vernon 2003).  ASexual contact@ includes
any touching of any part of a child=s body, including touching through clothing, with any part of the
genitals of a person.  Id. ' 21.11(c)(1).  

Appellant argues that the
evidence is factually insufficient to convict him of indecency with a child
because K.R., a child, was the sole witness; other children who rode on K.R.=s bus said they never saw her sit on Appellant=s lap; one child testified that she saw K.R. sit on Appellant=s leg but not his lap; in her first three interviews with police, K.R.
did not mention that Appellant put her hand on his penis; and Appellant=s belly protruded over his lap, he suffered from diabetes, and he had
trouble ejaculating.  We will consider
each of these points in turn.








With regard to Appellant=s first argument, the uncorroborated testimony of a child complainant
is sufficient to support a conviction under penal code chapter 21.  Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005).  Indecency with a child is a chapter 21
offense.  See Tex. Penal Code Ann. ' 21.11 (Vernon 2003). 
Therefore, K.R.=s
uncorroborated testimony is sufficient to support Appellant=s conviction, even though she is a child.  To the extent that age can be a factor in
assessing a witness=s
credibility, we defer to the jury=s assessment of K.R.=s credibility.  See Zuniga,144
S.W.3d at 481.

The testimony of other
students on K.R.=s bus who
did not see K.R. sit on Appellant=s lap is another factor in assessing K.R.=s credibility, and we must again defer to the jury.

As for Appellant=s fourth point, the record reflects that K.R. did not describe
Appellant=s conduct
with specificity until after several interviews with law enforcement over
several days.  Detective Kizer testified
that this was normal behavior for children who have been sexually abused.  Again, the implication of this evidence goes
to K.R.=s credibility.








With regard to Appellant=s weight and health problems, Appellant=s medical records reflect that he is 5=11@ tall and
weighed about 250 pounds in 2001 and 2002. 
This is some evidence from which the jury might infer that Appellant=s stomach protruded over his lap. 
The record also reflects that Appellant was present in the courtroom
throughout his trial, where the jury could presumably observe him seated at the
defense table and see for themselves whether the size of his stomach might have
precluded the indecent contact alleged by K.R. 
Weighing against whatever inference the jury might draw from the medical
records, of course, is K.R.=s testimony.  As for Appellant=s diabetic condition and inability to ejaculate: we see no relevant
connection between this evidence and the school bus incident.  Appellant does not explain its relevance or
its effect on factual sufficiency.

Considering the evidence in
the light most favorable to the verdict, we hold that it was legally sufficient
to support Appellant=s conviction
for indecency with a child.  Considering
all of the evidence in a neutral light, and having specifically considered the
evidence highlighted by Appellant, we hold that the evidence was also factually
sufficient.  We overrule Appellant=s fourth supplemental point.

IV.            
Conclusion

            Having
overruled all of Appellant=s
points, we affirm the judgment of the trial court.  See Tex.
R. App. P. 43.2(a).

 

 

ANNE GARDNER

JUSTICE

 








PANEL F:    GARDNER, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  July 27, 2006











[1]K.R.
testified that this second incident occurred in late April or early May of 2002
at the end of her fifth-grade school year. 
Later, she testified that the incident occurred during Aone
of the warmer@
months when she was in the fifth grade, that Appellant drove her bus on the day
of the incident, and that he stopped driving her bus five or six days after the
incident.  Douglas Becker, the assistant
transportation director for the Denton ISD, testified that Appellant stopped
driving the bus that serviced K.R.=s school in November 2001 and
was fired at the end of March 2002. 





[2]Bailey
testified that these photographs demonstrated that it would be difficult for
someone sitting in the driver=s seat to hold another person
on his lap and that the size of Appellant=s stomach would make it
difficult for someone seated in his lap to feel Appellant=s
penis. 





[3]Appellant=s
entire argument on legal insufficiency is: AAppellant argues the evidence
is legally insufficient.@ 





[4]We
note that the definition of sexual Aperformance@
includes photographs, but Appellant=s indictment falls under the
definition of Asexual
conduct,@
which does not include or require photographs. 
See '
43.25(2), (3).





[5]Again,
Appellant=s
argument on legal sufficiency is a single sentence: AAppellant
argues the evidence was legally insufficient in that no rational finder of fact
could have found Appellant guilty by [sic] a reasonable doubt.@