**Edward John MATULA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–97–226–CR.

Court of Appeals of Texas,
Corpus Christi.

July 2, 1998.

Charles W. Medlin, David Cunningham, Houston, for Appellant.

W. C. Kirkendall, Dist. Atty., Frank Follis, Asst. Dist. Atty., Seguin, for State.

Before SEERDEN, C.J., and YANEZ and KENNEDY,[1] JJ.

## OPINION

NOAH KENNEDY, Justice (Retired).

Pursuant to rule 50 of the Texas Rules of Appellate Procedure, we withdraw our earlier opinion issued on May 14, 1998, and substitute the following opinion. TEX.R.APP. P. 50.

The undisputed facts show that on December 1, 1995 a pickup truck overturned in Lavaca County on FM 531. The pickup truck had been towing a jeep, which was found off the road in a borrow ditch. The two persons involved in the accident were appellant, Edward John Matula, and a passenger named Allen Marek, who was killed.

The first persons to arrive at the scene other than the participants in the accident, were Darryl and Cheryl Steffek. Ms. Steffek called for assistance on a cellular phone. The next person to arrive was Kim Petter, a dispatcher for the Lavaca County Sheriff's

---

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

Department. They were followed by, in order of arrival, Jeff Mraz, Matt Cerney and Jimmy Wilemon, all of whom were emergency medical technicians, and by State Trooper Jack Downs.

When the Steffeks first arrived, appellant, Matula, was trapped in the overturned truck. He was finally released from the driver's side of the truck by the use of an instrument called "jaws of life" and was taken to Yoakum Community Hospital. Allen Marek was pronounced dead at the scene.

The evidence is also undisputed that Matula and Marek were returning from a hunting trip in west Texas when the accident occurred. They were in the pickup loaded with hunting gear and were towing a jeep. Appellant was driving and Marek was in the passenger seat when the truck overturned.

Appellant was charged by indictment, and convicted by a jury, of intoxication manslaughter. Tex. Penal Code Ann. § 49.08 (Vernon 1994).

Appellant's three points of error on appeal all deal with the sufficiency, both legal and factual, of the evidence to prove that appellant was intoxicated at the time of the accident and that appellant's intoxication caused the death of Allen Marek. We will consider them together.

We examine the sufficiency of the evidence from the record in light of the law given us by three cases: *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim.App.1996); and the December 17, 1997 opinion in *Cain v. State*, 958 S.W.2d 404 (Tex.Crim.App.1997).

In *Jackson*, the U.S. Supreme Court held that:

Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (citation omitted). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the* evidence is to be considered in the light most favorable to the prosecution (emphasis theirs). The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Our Court of Criminal Appeals in *Clewis* placed in context the *Jackson*[2] standard of review as one which constitutes the *minimum* standard for sustaining a conviction under the Fourteenth Amendment due process clause (emphasis theirs). *Clewis* at 132. The court goes on to say that "whether the evidence satisfies the current Jackson test is a question of *law*" (emphasis theirs), and, further, "a determination that the evidence is 'legally insufficient' means that the case should never have been submitted to the jury". *Id.* at 132, 133. The court then distinguishes the ultimate role of the court of appeals when reviewing factual insufficiency as opposed to legal insufficiency to be that if a court of appeals should vacate a conviction based upon factually insufficient evidence, it should remand the case for a new trial. *Id.* at 133, 134.

In *Cain*, the Court of Criminal Appeals bolsters and clarifies *Clewis*. It reaffirms the proper standard of review by the courts of appeals of factual insufficiency to be, "views all of the evidence without the prism of 'in the light most favorable to the prosecution'[3] and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 407. It also sets out certain limits on our power of review, to-wit, (i) we should only exercise our fact jurisdiction to prevent a manifestly unjust result, we are not free to set aside a jury verdict merely

**2.** The three minority opinions in *Clewis* would hold that the test for sufficiency in *Jackson* should be the only test.

**3.** The *Jackson* standard.

because the judges feel that a different result is more reasonable, *Id.* at 407; (ii) we must support a finding of factual insufficiency by providing a detailed explanation of that finding so that the Court of Criminal Appeals can ensure that we accorded the proper deference to the jury findings;[4] and (iii) we must review all of the evidence as opposed to considering only the evidence that supports the verdict. *Id.* at 407. Since this appeal challenges the sufficiency of the evidence to show that appellant was intoxicated at the time of the accident and that his intoxication caused the accident, we review the evidence in view of the instructions just cited.

■ The evidence of appellant's intoxication consists of:

(a) The testimony of medical technologist, Mohamad Rocki, was that he drew blood from appellant at the hospital, tested it for alcohol and the result thereof showed an "alcohol value" of 129 mg. per deciliter which he translated to .129 grams per milliliter. The blood was drawn after Mr. Rocki arrived at the hospital which was five minutes (traveling time) after he got the phone call (2:00 a.m.), *ie.* shortly after 2:00 in the morning.

(b) Dr. Ralph Wagner, M.D., treated appellant in the emergency room at 2:05 a.m. He stated that appellant, in answer to his question, stated that he had been drinking before the accident. Dr. Wagner answered "generally, yes" to the question in court, "Would you expect that a person who has a certain level of alcohol in his body at one time would have a lesser amount at some later time?" On cross-examination, Dr. Wagner stated that when he observed appellant at the hospital he had no "observable symptoms of intoxication" and that he didn't appear to be intoxicated. In answer to a question by appellant's counsel, he admitted that he ordered the blood test because appellant had told him he had had something to drink and further stated that he could not observe any outward mental or physical manifestations of intoxication. Dr. Wagner stated that, from his position in the vehicle, appellant was the driver.

(c) The medical examiner, Dr. Roberto Bayardo, M.D., testified, in answer to a hypothetical question, that if a person had a blood alcohol level of .129 two hours after he stopped drinking alcohol[5] this level would have been higher two hours before. He testified that a person with a blood-alcohol level of .129 would experience the loss of the normal use of [his] physical and mental faculties. Dr. Bayardo conceded on cross-examination that if a second blood test had been performed some time twenty minutes after the first, and the results compared, he would have known whether Appellant was in the absorption or elimination process. On redirect, Dr. Bayardo made the assumption that two hours and forty-five minutes after Appellant had his last drink he was in the elimination phase.

(d) Mr. Steffek testified that, when he arrived at the scene, appellant was on the driver's side.

(e) At trial, Trooper Jack Downs, who investigated the accident, gave his conclusion that the cause of the accident was:

Basically the truck went straight instead of making the curve and then the driver corrected too hard to the right. The combination of vehicles got into a broadside skid, the left side first, and basically made the curve and making a—rotating clockwise and then it was still rotating and attempt-

---

4. In furtherance of which, we should detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient—why it shocks the conscience or clearly demonstrates bias and why the contrary evidence greatly outweighs the evidence supporting the verdict.

5. Other than the occupants of the truck, no one saw the accident. The first persons to arrive at the scene following the accident placed their time of arrival at five to seven minutes after midnight. One of these witnesses stated appellant told her he had been "there" (under the truck) for at least half an hour.

ing—and coming back onto the road when it rolled.

He further testified that the pavement was dry on the night of the accident.

As stated earlier, Dr. Bayardo testified: that a person with a blood-alcohol level of .129 would experience the loss of the normal use of [his] physical and mental faculties.

The only evidence that appellant had his last drink at some time before the wreck was his own statement that he stopped drinking in San Antonio which, it is undisputed, is some seventy or so miles from the scene of the accident.

We overrule the appellant's legal sufficiency point.

To counter the State's evidence, the record reveals that:

(a) a paramedic who was called to the scene testified that he saw no symptoms of Appellant's intoxication and that he formed an opinion that Appellant was sober which, he changed to "I don't know if he was sober, but he ... answered all of my questions.", and, once again, "he didn't appear to be intoxicated".

(b) an emergency medical technician with the Yoakum Fire Department, who talked to Appellant while he was still in the truck and who remained at the scene until Appellant was taken away in the ambulance, said that he saw no symptoms of intoxication as he observed Appellant. When asked his opinion whether Appellant was intoxicated, he replied "to the best of my knowledge, I didn't feel that he was."

Evaluating the evidence within the parameters set forth in *Cain*, we hold that the jurors, being the exclusive judges of the facts and of the weight to be given to the testimony, Tex.Code Crim. Proc. Ann., art. 36.13, 38.04 (Vernon 1979 and 1981), were free to believe the testimony of Mr. Rocki and Dr. Bayardo and find that Appellant was operating the motor vehicle on the occasion not having the normal use of mental faculties by reason of the introduction of alcohol into the body or by having an alcohol concentration of .10. Texas Penal Code Ann. § 49.01(2). From all of the evidence, they were free to find that by reason of such intoxication, appellant caused the death of Allen Marek.

Appellant's evidence does not outweigh, greatly or otherwise, the evidence of the State, nor does the jury's verdict shock our conscience. We overrule all of appellant's points of error and AFFIRM the judgment of the trial court.