

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-313-CR

ALLEN CLAUDE SHULER                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

A jury convicted appellant Allen Claude Shuler of driving while intoxicated (DWI).  *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).  In three points, Shuler argues that his conviction should be reversed because the evidence is legally and factually insufficient to support the conviction and because the trial

---

[1] *... See* Tex. R. App. P. 47.4.

court erred by overruling his objection to an allegedly improper commitment question during voir dire. We affirm.

## Background Facts

At about 1 a.m. on March 18, 2004, Officer John Harding of the North Richland Hills Police Department (NRHPD) saw Shuler use his car's brakes on and off continuously and make an illegal right turn by signaling the turn at a stop sign, which was not outside of the required one hundred feet prior to making the turn. Officer Harding turned on his patrol car's overhead emergency lights. Officer Harding testified that Shuler did not pull over immediately, but drove for approximately a thousand feet before pulling over and striking a curb. Shuler testified that he pulled over immediately after Officer Harding initiated his lights and did not hit the curb.

Upon approaching Shuler's car, Officer Harding noticed Shuler's watery eyes, smelled alcohol on his breath, and asked him if he had been drinking. Shuler admitted to having two beers while at work. Officer Harding asked Shuler to step out of his car so that Officer Harding could conduct field sobriety tests.[2] Shuler showed four clues for intoxication on the horizontal-gaze-

---

[2] ... Officer Harding completed forty hours of field sobriety training through the National Highway Traffic Safety Administration in 2000. He has had further training on field sobriety tests since that time.

2

nystagmus test, four clues on the walk-and-turn test, and four clues on the one-leg-stand test.  Based on Shuler's driving errors and on the field sobriety tests, Officer Harding believed Shuler to be intoxicated and arrested him.

At a city jail, at about 2 a.m., NRHPD Officer Daniel Bohanon asked Shuler to give breath samples into an Intoxilyzer.  Shuler provided two breath samples that registered alcohol concentrations of .123 and .126.

At the time that he gave Shuler the Intoxilyzer test, Officer Bohanon was certified by the Tarrant County Medical Examiner's Office to perform an Intoxilyzer.  The State presented extensive evidence through a forensic chemist about the reliability and scientific theory of Intoxilyzers in general and of the specific Intoxilyzer that Shuler used.  The chemist testified that an individual's blood alcohol level does not typically change significantly in a forty-five minute time span (which is close to the time between Shuler's operation of his car and the breath samples he provided).

The State charged Shuler with DWI, alleging that Shuler had been intoxicated while driving because he either did not have the normal use of his mental or physical faculties because of alcohol or he had a blood alcohol concentration of at least 0.08.  Shuler pled not guilty before a jury in July 2008.  At the end of the trial, the jury found Shuler guilty, and the trial court sentenced him to ninety days' confinement that was suspended for twenty-four

months under several conditions of community supervision.  Shuler filed his notice of appeal.

## Evidentiary Sufficiency

A person commits DWI if "the person is intoxicated while operating a motor vehicle in a public place."  Tex. Penal Code Ann. § 49.04(a); *Harkins v. State*, 268 S.W.3d 740, 748 (Tex. App.—Fort Worth 2008, pet. ref'd); *see also Paschall v. State*, 285 S.W.3d 166, 174 (Tex. App.—Fort Worth 2009, pet. ref'd) ("The elements of [DWI] are (1) the defendant, (2) operated, (3) a motor vehicle, (4) while intoxicated, and (5) on or about the date alleged in the State's charging instrument.").  The penal code defines "intoxicated" alternatively as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or as "having an alcohol concentration of 0.08 or more."  Tex. Penal Code Ann. § 49.01(2) (Vernon 2003); *McCown v. State*, 192 S.W.3d 158, 164 (Tex. App.—Fort Worth 2006, pet. ref'd).  Either definition of intoxication may be sufficient to support a DWI conviction, even when there is evidence weighing against the other definition.  *See Matula v. State*, 972 S.W.2d 891, 893–94 (Tex. App.—Corpus Christi 1998, no pet.) (holding that a blood alcohol concentration of .129 was sufficient to support intoxication despite testimony from eyewitnesses that the defendant was sober).

4

Legal sufficiency

In his first point, Shuler asserts that the evidence is legally insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

Shuler testified at trial that he had been drinking before he drove. Officer Harding testified that he smelled alcohol on Shuler and that Shuler had glassy eyes and showed four out of six clues for intoxication on each of the three sobriety tests Officer Harding administered after pulling Shuler over. Shuler provided breath samples registering alcohol concentrations of .123 and .126.

After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that Shuler was intoxicated while he drove as charged by the State. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we overrule Shuler's first point.

Factual sufficiency

In his second point, Shuler asserts that the evidence is factually insufficient to support his conviction. When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v.*

*State*, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the

factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

In addition to the facts detailed above, Officer Bohanon testified that he watched Shuler for fifteen minutes prior to taking the breath samples and ensured that Shuler had nothing in his mouth, as required for the proper administration of the Intoxilyzer test. Shuler disputed that he struck the curb upon being pulled over by Officer Harding and that Officer Bohanon observed him for a full fifteen minutes before Shuler provided breath samples, and he testified that he had tobacco in his mouth when he took the test.[3] He testified that he took the breath test because he "had no reason to think that [he] was intoxicated." Officer Harding testified that on the night of Shuler's arrest, Shuler's speech was coherent and normal. And Officer Harding agreed that there were some portions of the field sobriety tests that Shuler either passed or failed with only minor deviations from Officer Harding's instructions.

---

[3] ... We will defer to the jury's implicit resolution in the State's favor of the conflicts between Officer Bohanon's testimony and Shuler's testimony. *See Lancon,* 253 S.W.3d at 704–05 (explaining that a court of appeals "must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury"); *Johnson,* 23 S.W.3d at 8–9.

8

However, based on the other evidence described above regarding Shuler's driving pattern, his smell of alcohol, his glassy eyes, his general performance on the field sobriety tests, and his breath samples, we conclude that the evidence supporting the conviction is not so weak, nor the contrary evidence so overwhelming, that the jury's verdict is clearly wrong or manifestly unjust. *Watson,* 204 S.W.3d at 414–15, 417. Therefore, we hold that the evidence is factually sufficient to support the jury's conclusion that Shuler was intoxicated while driving, and we overrule Shuler's second point.

## Commitment Question

In his third point, Shuler asserts that the trial court erred by allowing the State's prosecutor to ask the jury an allegedly improper commitment question during voir dire:

> If at the end of the case you've heard all the evidence and [the State has] proved to you that there was a breath test, the breath test was a 0.08 or higher, and you believe beyond a reasonable doubt that the Intoxilyzer machine was working that day, can you find the defendant guilty?

Shuler's counsel objected to the question by stating,

> [I]t is a misinstruction as to what the law in this case is. The law in the case has nothing to do with jurors contracting to believe in the reliability of an Intoxilyzer 5000. . . . [W]e're asking jurors to contract so I object because it's a misstatement of the law, in addition to being a fact specific commitment question.

9

In his own voir dire examination, Shuler's counsel explained his objection to the prosecutor's question by stating, "The law says a person's intoxicated if, when they are driving, they have an alcohol concentration of .08 in their body. That's what the law says. The law doesn't say if you think a machine is run right or wrong that the person's guilty." Shuler similarly contends on appeal that the question is improper because while having a valid breath test of 0.08 or higher proves *intoxication*, it does not support *guilt* by itself, because it does not relate to whether a defendant was operating a motor vehicle at the time of the intoxication.[4]

Standard of review

The trial court has broad discretion over the process of selecting a jury. *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040 (1989); *Ewing v. State*, 157 S.W.3d 863, 866 (Tex. App.—Fort Worth 2005, no pet.). The propriety of a particular voir dire question is reviewed under an abuse of discretion standard. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Allridge*, 762 S.W.2d at 167; *Vann v. State*, 216 S.W.3d 881, 884 (Tex. App.—Fort Worth 2007, no pet.).

---

[4] In his brief, Shuler specifies that he was "entitled to challenge the improper question because it erroneously committed the jury to convict—not merely find intoxication—if [there was a breath test of 0.08 or higher and the Intoxilyzer was working properly]."

Applicable law and analysis

A commitment question is one that commits a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179–80 (Tex. Crim. App. 2001). It is generally improper to ask a commitment question during voir dire because it amounts to an improper attempt to bind a juror. *See Lydia v. State,* 117 S.W.3d 902, 905 (Tex. App.—Fort Worth 2003, pet. ref'd). But some commitment questions are proper. *Id.*; *see Standefer*, 59 S.W.3d at 181–83.

For instance, counsel may ask prospective jurors whether they can follow the law when it requires a certain type of commitment from jurors and when the question states only the facts required to establish a challenge for cause. *Standefer,* 59 S.W.3d at 181–82 (illustrating that counsel can ask jurors whether they can consider probation when the law requires the jurors to be able to consider the full range of punishment); *Vann*, 216 S.W.3d at 884–85. However, when "the law does not require the commitment, a commitment question is invariably improper." *Standefer*, 59 S.W.3d at 181.

Thus, the determination of whether a question is an improper commitment question is a three-part test: (1) is the question a commitment question; (2) could a possible answer to the question produce a valid challenge for cause because it would show that a juror would not follow the law; and (3)

11

does the question only contain the facts required to make such a challenge. *See Tijerina v. State*, 202 S.W.3d 299, 302 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g). "[T]he purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

The law does not require a jury to convict a defendant for DWI upon the showing of only intoxication through a properly recorded breath test exceeding 0.08; the State must also prove that the intoxication occurred at the time the defendant operated a vehicle. *See* Tex. Penal Code Ann. § 49.04(a); *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) (explaining that Intoxilyzer results indicate consumption of alcohol and make it more probable that a defendant was intoxicated at the time of driving); *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.) (explaining that there must be a link between driving and intoxication). In other words, as the court of criminal appeals has explained,

> To prove the element of intoxication in a prosecution for the offense of driving while intoxicated, the State must offer proof beyond a reasonable doubt as to that element. To be sure, if the State relies upon the [numeric alcohol concentration] definition of intoxication, then such proof will normally appear in the form of a

12

chemical test showing the alcohol concentration in a defendant's body *near the time of the offense.* However, a conviction will not necessarily follow from the offer of such a test. First, the trier of fact must still be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath, blood or urine. Second, the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had [the required] alcohol concentration in his body *at the time of the offense.*

> *. . .* [Nothing prevents] a defendant from arguing that his alcohol concentration increased from the time of arrest to the time of testing.

*Forte v. State,* 707 S.W.2d 89, 94–95 (Tex. Crim. App. 1986) (citation omitted); *see Bagheri v. State*, 119 S.W.3d 755, 760–61 (Tex. Crim. App. 2003). The State argues that the commitment question quoted above[5] is proper because when it is considered in the full context of the State's voir dire, the question informed the jury that a defendant must be intoxicated while driving to be guilty of DWI.

In *Halprin v. State*, the appellant claimed that the trial court allowed the State's prosecutor to ask an improper commitment question regarding mitigating evidence in a capital murder case. 170 S.W.3d 111, 118 (Tex. Crim. App. 2005). The court of criminal appeals relied on the "totality of the voir dire

---

[5] ... The State concedes and we conclude that the question is a commitment question because it connected a hypothetical fact—a breath test of 0.08 of higher—to the commitment of finding Shuler guilty.

record," including statements made by the prosecutor after the question in dispute, to hold that the question was not improper under *Standefer*. *Id.* at 118–19 & n.8.

In *Lee v. State*, the court of criminal appeals considered whether a proper commitment question related to the "one witness rule" (allowing a conviction on the testimony of one witness where guilt is proven beyond a reasonable doubt) that was asked to one juror could give appropriate context to subsequent similar but truncated questions to other jurors when the subsequent questions themselves would not have been proper under *Standefer*. 206 S.W.3d 620, 623–24 (Tex. Crim. App. 2006). The court explained that during the voir dire in *Lee*, "in some instances, the State merely called a juror by name after the previous juror answered the question or asked only 'What do you think?'" *Id.* at 624. The court then explained,

> Viewed in the abstract and singularly, these questions arguably do not flesh out each juror's view on whether he or she would convict based on one witness they believed by a reasonable doubt who convinced them of the elements of a crime. *But we do not view the questioning of each juror in isolation.* In context, these later questions appear to be merely short-hand renditions of the original question that properly elicited whether the venire persons could follow the law, and we think it reasonable to presume the venire persons understood the later questions in this manner.

14

*Id.* (emphasis added).[6]

Based on the reasoning of *Halprin* and *Lee*, we will examine the question challenged by Shuler in the context of the other voir dire questions and statements by the prosecutor. In her introductory speech to the jury panel, the prosecutor told the jury that the State had to prove that Shuler operated "a vehicle in a public place *while intoxicated.*"[7] Later, the prosecutor told the jury that the State "can elect to prove [DWI] by the loss of normal use [of faculties], or [the State] can elect to prove that [Shuler's] *blood alcohol concentration was a .08 or higher at the time of driving.*" The prosecutor then asked a juror whether "*at the time of driving, . . . [if Shuler's] blood alcohol level was a .08 or higher*, would you be able to find him guilty?" Next, just two pages in the reporter's record before the question at issue, the prosecutor told the jury that the "State only needs to prove one of those definitions of intoxication, either the *.08 at the time of driving* or [loss of normal use of faculties]." Finally, just

---

[6] We also note that courts address other voir dire issues by reviewing the context of the record. *See King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000) (considering the "totality of the voir dire testimony" to review a trial court's decision on a challenge to a juror for cause); *Cantu v. State*, 842 S.W.2d 667, 687 (Tex. Crim. App. 1992) (reviewing the "totality of the voir dire" to determine an issue regarding the amount of time given for voir dire), *cert. denied*, 509 U.S. 926 (1993).

[7] We will add emphasis through italics to the prosecutor's statements and questions that give context to the challenged commitment question.

15

after the question at issue, the prosecutor asked several jurors, "Can you . . . also follow the law and find someone guilty if we prove to you that the breath test was over a *.08 at the time of driving?*"

We hold that the trial court could have reasonably found that these several references, which connect the 0.08 blood alcohol level to the time of operating a vehicle, provided adequate context to the challenged question so that the jury could understand that the same connection was tacitly included as part of that question.  Thus, we hold that in context, the question was not an improper commitment question and that the trial court did not abuse its discretion by overruling Shuler's objection to the question.  *See Lee*, 206 S.W.3d at 623–24; *Halprin*, 170 S.W.3d at 118–19; *Barajas,* 93 S.W.3d at 38. We therefore overrule Shuler's third point.

16

## Conclusion

Having overruled all of Shuler's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 24, 2009