COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-313-CR

 

 

ALLEN CLAUDE SHULER                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY
CRIMINAL COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








A jury convicted appellant Allen Claude Shuler of
driving while intoxicated (DWI).  See
Tex. Penal Code Ann. ' 49.04(a) (Vernon
2003).  In three points, Shuler argues
that his conviction should be reversed because the evidence is legally and
factually insufficient to support the conviction and because the trial court
erred by overruling his objection to an allegedly improper commitment question
during voir dire.  We affirm.

                                        Background
Facts

At about 1 a.m. on March 18, 2004, Officer John
Harding of the North Richland Hills Police Department (NRHPD) saw Shuler use
his car=s brakes
on and off continuously and make an illegal right turn by signaling the turn at
a stop sign, which was not outside of the required one hundred feet prior to
making the turn.  Officer Harding turned
on his patrol car=s overhead emergency
lights.  Officer Harding testified that
Shuler did not pull over immediately, but drove for approximately a thousand
feet before pulling over and striking a curb. 
Shuler testified that he pulled over immediately after Officer Harding
initiated his lights and did not hit the curb.








Upon approaching Shuler=s car,
Officer Harding noticed Shuler=s watery
eyes, smelled alcohol on his breath, and asked him if he had been
drinking.  Shuler admitted to having two
beers while at work.  Officer Harding
asked Shuler to step out of his car so that Officer Harding could conduct field
sobriety tests.[2]  Shuler showed four clues for intoxication on
the horizontal-gaze-nystagmus test, four clues on the walk-and-turn test, and
four clues on the one-leg-stand test. 
Based on Shuler=s driving errors and on the
field sobriety tests, Officer Harding believed Shuler to be intoxicated and
arrested him.

At a city jail, at about 2 a.m., NRHPD Officer
Daniel Bohanon asked Shuler to give breath samples into an Intoxilyzer.  Shuler provided two breath samples that
registered alcohol concentrations of .123 and .126.

At the time that he gave Shuler the Intoxilyzer
test, Officer Bohanon was certified by the Tarrant County Medical Examiner=s Office
to perform an Intoxilyzer.  The State
presented extensive evidence through a forensic chemist about the reliability
and scientific theory of Intoxilyzers in general and of the specific
Intoxilyzer that Shuler used.  The
chemist testified that an individual=s blood
alcohol level does not typically change significantly in a forty-five minute
time span (which is close to the time between Shuler=s
operation of his car and the breath samples he provided).








The State charged Shuler with DWI, alleging that
Shuler had been intoxicated while driving because he either did not have the
normal use of his mental or physical faculties because of alcohol or he had a
blood alcohol concentration of at least 0.08. 
Shuler pled not guilty before a jury in July 2008.  At the end of the trial, the jury found
Shuler guilty, and the trial court sentenced him to ninety days=
confinement that was suspended for twenty-four months under several conditions
of community supervision.  Shuler filed
his notice of appeal.

                                     Evidentiary
Sufficiency

A person commits DWI if Athe
person is intoxicated while operating a motor vehicle in a public place.@  Tex. Penal Code Ann. '
49.04(a); Harkins v. State, 268 S.W.3d 740, 748 (Tex. App.CFort
Worth 2008, pet. ref=d); see also Paschall v.
State, 285 S.W.3d 166, 174 (Tex. App.CFort
Worth 2009, pet. ref=d) (AThe
elements of [DWI] are (1) the defendant, (2) operated, (3) a motor vehicle, (4)
while intoxicated, and (5) on or about the date alleged in the State=s
charging instrument.@).  The penal code defines Aintoxicated@
alternatively as Anot having the normal use of
mental or physical faculties by reason of the introduction of alcohol .
. . into the body@ or as Ahaving
an alcohol concentration of 0.08 or more.@  Tex. Penal Code Ann. '
49.01(2) (Vernon 2003); McCown v. State, 192 S.W.3d 158, 164 (Tex. App.CFort
Worth 2006, pet. ref=d).  Either definition of intoxication may be
sufficient to support a DWI conviction, even when there is evidence weighing
against the other definition.  See
Matula v. State, 972 S.W.2d 891, 893B94 (Tex.
App.CCorpus
Christi 1998, no pet.) (holding that a blood alcohol concentration of .129 was
sufficient to support intoxication despite testimony from eyewitnesses that the
defendant was sober).








Legal sufficiency

In his first point, Shuler asserts that the
evidence is legally insufficient to support his conviction.  In reviewing the legal sufficiency of the
evidence, we view all of the evidence in the light most favorable to the
prosecution in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight
and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).








Shuler testified at trial that he had been
drinking before he drove.  Officer
Harding testified that he smelled alcohol on Shuler and that Shuler had glassy
eyes and showed four out of six clues for intoxication on each of the three
sobriety tests Officer Harding administered after pulling Shuler over.  Shuler provided breath samples registering
alcohol concentrations of .123 and .126.

After reviewing the evidence in the light most
favorable to the verdict, we conclude that a rational juror could have found
that Shuler was intoxicated while he drove as charged by the State.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789.  Accordingly, we overrule
Shuler=s first
point.

Factual sufficiency








In his second point, Shuler asserts that the
evidence is factually insufficient to support his conviction.  When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704B05 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.

In addition to the facts detailed above, Officer
Bohanon testified that he watched Shuler for fifteen minutes prior to taking
the breath samples and ensured that Shuler had nothing in his mouth, as
required for the proper administration of the Intoxilyzer test.  Shuler disputed that he struck the curb upon
being pulled over by Officer Harding and that Officer Bohanon observed him for
a full fifteen minutes before Shuler provided breath samples, and he testified
that he had tobacco in his mouth when he took the test.[3]  He testified that he took the breath test
because he Ahad no reason to think that [he]
was intoxicated.@ 
Officer Harding testified that on the night of Shuler=s
arrest, Shuler=s speech was coherent and
normal.  And Officer Harding agreed that
there were some portions of the field sobriety tests that Shuler either passed
or failed with only minor deviations from Officer Harding=s
instructions.








However, based on the other evidence described
above regarding Shuler=s driving pattern, his smell of
alcohol, his glassy eyes, his general performance on the field sobriety tests, and
his breath samples, we conclude that the evidence supporting the conviction is
not so weak, nor the contrary evidence so overwhelming, that the jury=s
verdict is clearly wrong or manifestly unjust. 
Watson, 204 S.W.3d at 414B15,
417.  Therefore, we hold that the
evidence is factually sufficient to support the jury=s
conclusion that Shuler was intoxicated while driving, and we overrule Shuler=s second
point.

                                     Commitment
Question

In his third point, Shuler asserts that the trial
court erred by allowing the State=s
prosecutor to ask the jury an allegedly improper commitment question during
voir dire:

If at the end of the case
you=ve heard all the evidence
and [the State has] proved to you that there was a breath test, the breath test
was a 0.08 or higher, and you believe beyond a reasonable doubt that the
Intoxilyzer machine was working that day, can you find the defendant guilty?

 

Shuler=s counsel objected to the
question by stating, 

[I]t is a misinstruction as to what the law in
this case is.  The law in the case has
nothing to do with jurors contracting to believe in the reliability of an
Intoxilyzer 5000. . . .  [W]e=re
asking jurors to contract so I object because it=s a
misstatement of the law, in addition to being a fact specific commitment
question. 








In his own voir dire examination, Shuler=s
counsel explained his objection to the prosecutor=s
question by stating, AThe law says a person=s
intoxicated if, when they are driving, they have an alcohol concentration of
.08 in their body.  That=s what
the law says.  The law doesn=t say if
you think a machine is run right or wrong that the person=s
guilty.@  Shuler similarly contends on appeal that the
question is improper because while having a valid breath test of 0.08 or higher
proves intoxication, it does not support guilt by itself, because
it does not relate to whether a defendant was operating a motor vehicle at the
time of the intoxication.[4]

Standard of review

The trial court has broad discretion over the
process of selecting a jury.  Allridge
v. State, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988), cert. denied,
489 U.S. 1040 (1989); Ewing v. State, 157 S.W.3d 863, 866 (Tex. App.CFort
Worth 2005, no pet.).  The propriety of a
particular voir dire question is reviewed under an abuse of discretion
standard.  Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge, 762 S.W.2d at 167; Vann
v. State, 216 S.W.3d 881, 884 (Tex. App.CFort
Worth 2007, no pet.).








Applicable law and analysis

A commitment question is one that commits a
prospective juror to resolve, or to refrain from resolving, an issue a certain
way after learning a particular fact.  Standefer
v. State, 59 S.W.3d 177, 179B80 (Tex.
Crim. App. 2001).  It is generally
improper to ask a commitment question during voir dire because it amounts to an
improper attempt to bind a juror.  See
Lydia v. State, 117 S.W.3d 902, 905 (Tex. App.CFort
Worth 2003, pet. ref=d).  But some commitment questions are
proper.  Id.; see Standefer,
59 S.W.3d at 181B83.

For instance, counsel may ask prospective jurors
whether they can follow the law when it requires a certain type of commitment
from jurors and when the question states only the facts required to establish a
challenge for cause.  Standefer,
59 S.W.3d at 181B82 (illustrating that counsel
can ask jurors whether they can consider probation when the law requires the
jurors to be able to consider the full range of punishment); Vann, 216
S.W.3d at 884B85.  However, when Athe law
does not require the commitment, a commitment question is invariably improper.@  Standefer, 59 S.W.3d at 181.








Thus, the determination of whether a question is
an improper commitment question is a three-part test:  (1) is the question a commitment question;
(2) could a possible answer to the question produce a valid challenge for cause
because it would show that a juror would not follow the law; and (3) does the
question only contain the facts required to make such a challenge.  See Tijerina v. State, 202 S.W.3d 299,
302 (Tex. App.CFort Worth 2006, pet. ref=d) (op.
on reh=g).  A[T]he
purpose for prohibiting improper commitment questions by either the State or
the defendant is to ensure that the jury will listen to the evidence with an
open mindCa mind that is impartial and
without bias or prejudiceCand render a verdict based upon
that evidence.@ 
Sanchez v. State, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

The law does not require a jury to convict a
defendant for DWI upon the showing of only intoxication through a properly
recorded breath test exceeding 0.08; the State must also prove that the
intoxication occurred at the time the defendant operated a vehicle.  See Tex. Penal Code Ann. '
49.04(a); State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)
(explaining that Intoxilyzer results indicate consumption of alcohol and make
it more probable that a defendant was intoxicated at the time of driving);
Zavala v. State, 89 S.W.3d 134, 139 (Tex. App.CCorpus
Christi 2002, no pet.) (explaining that there must be a link between driving
and intoxication).  In other words, as
the court of criminal appeals has explained, 








To prove the element of
intoxication in a prosecution for the offense of driving while intoxicated, the
State must offer proof beyond a reasonable doubt as to that element.  To be sure, if the State relies upon the
[numeric alcohol concentration] definition of intoxication, then such proof
will normally appear in the form of a chemical test showing the alcohol
concentration in a defendant=s body near the time of the offense.  However, a conviction will not necessarily
follow from the offer of such a test. 
First, the trier of fact must still be convinced beyond a reasonable
doubt that the chemical test provides trustworthy evidence of alcohol
concentration in a defendant=s breath, blood or urine.  Second, the jury must still be convinced
beyond a reasonable doubt that an inference can be made from the results of the
chemical test that the defendant had [the required] alcohol concentration in
his body at the time of the offense.

 

. . .  [Nothing prevents] a defendant
from arguing that his alcohol concentration increased from the time of arrest
to the time of testing.

 

Forte v. State, 707 S.W.2d 89, 94B95 (Tex.
Crim. App. 1986) (citation omitted); see Bagheri v. State, 119 S.W.3d
755, 760B61 (Tex.
Crim. App. 2003).  The State argues that
the commitment question quoted above[5]
is proper because when it is considered in the full context of the State=s voir
dire, the question informed the jury that a defendant must be intoxicated while
driving to be guilty of DWI.








In Halprin v. State, the appellant claimed
that the trial court allowed the State=s
prosecutor to ask an improper commitment question regarding mitigating evidence
in a capital murder case.  170 S.W.3d
111, 118 (Tex. Crim. App. 2005).  The
court of criminal appeals relied on the Atotality
of the voir dire record,@ including statements made by
the prosecutor after the question in dispute, to hold that the question was not
improper under Standefer.  Id.
at 118B19 &
n.8.

In Lee v. State, the court of criminal
appeals considered whether a proper commitment question related to the Aone
witness rule@ (allowing a conviction on the
testimony of one witness where guilt is proven beyond a reasonable doubt) that
was asked to one juror could give appropriate context to subsequent similar but
truncated questions to other jurors when the subsequent questions themselves
would not have been proper under Standefer.  206 S.W.3d 620, 623B24 (Tex.
Crim. App. 2006).  The court explained
that during the voir dire in Lee, Ain some
instances, the State merely called a juror by name after the previous juror
answered the question or asked only >What do
you think?=@ Id.
at 624.  The court then explained,

Viewed in the abstract
and singularly, these questions arguably do not flesh out each juror=s view on whether he or
she would convict based on one witness they believed by a reasonable doubt who
convinced them of the elements of a crime. 
But we do not view the questioning of each juror in isolation.  In context, these later questions appear to be
merely short‑hand renditions of the original question that properly
elicited whether the venire persons could follow the law, and we think it
reasonable to presume the venire persons understood the later questions in this
manner.

 








Id. (emphasis added).[6]








Based on the reasoning of Halprin and Lee,
we will examine the question challenged by Shuler in the context of the other
voir dire questions and statements by the prosecutor.  In her introductory speech to the jury panel,
the prosecutor told the jury that the State had to prove that Shuler operated Aa
vehicle in a public place while intoxicated.@[7]  Later, the prosecutor told the jury that the
State Acan
elect to prove [DWI] by the loss of normal use [of faculties], or [the State]
can elect to prove that [Shuler=s] blood
alcohol concentration was a .08 or higher at the time of driving.@  The prosecutor then asked a juror whether Aat the
time of driving, . . . [if Shuler=s] blood
alcohol level was a .08 or higher, would you be able to find him
guilty?@  Next, just two pages in the reporter=s record
before the question at issue, the prosecutor told the jury that the AState
only needs to prove one of those definitions of intoxication, either the .08
at the time of driving or [loss of normal use of faculties].@  Finally, just after the question at issue,
the prosecutor asked several jurors, ACan you
. . . also follow the law and find someone guilty if we prove to you that the
breath test was over a .08 at the time of driving?@ 

We hold that the trial court could have
reasonably found that these several references, which connect the 0.08 blood
alcohol level to the time of operating a vehicle, provided adequate context to
the challenged question so that the jury could understand that the same
connection was tacitly included as part of that question.  Thus, we hold that in context, the question
was not an improper commitment question and that the trial court did not abuse
its discretion by overruling Shuler=s
objection to the question.  See Lee,
206 S.W.3d at 623B24; Halprin, 170 S.W.3d
at 118B19;
Barajas, 93 S.W.3d at 38.  We
therefore overrule Shuler=s third point.








                                             Conclusion

Having overruled all of Shuler=s
points, we affirm the trial court=s
judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

 

PANEL:  CAYCE, C.J.; LIVINGSTON
and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  September 24, 2009











[1]See Tex. R. App. P. 47.4.





[2]Officer Harding completed
forty hours of field sobriety training through the National Highway Traffic
Safety Administration in 2000.  He has
had further training on field sobriety tests since that time.





[3]We will defer to the jury=s implicit resolution in
the State=s favor of the conflicts
between Officer Bohanon=s testimony and Shuler=s testimony.  See Lancon, 253 S.W.3d at 704B05 (explaining that a
court of appeals Amust be cognizant of the
fact that a jury has already passed on the facts and must give due deference to
the determinations of the jury@); Johnson, 23 S.W.3d at 8B9.





[4]In his brief, Shuler
specifies that he was Aentitled to challenge the
improper question because it erroneously committed the jury to convictCnot merely find
intoxicationCif [there was a breath
test of 0.08 or higher and the Intoxilyzer was working properly].@





[5]The State concedes and we
conclude that the question is a commitment question because it connected a hypothetical
factCa breath test of 0.08 of
higherCto the commitment of
finding Shuler guilty.





[6]We also note that courts
address other voir dire issues by reviewing the context of the record.  See King v. State, 29 S.W.3d 556, 568
(Tex. Crim. App. 2000) (considering the Atotality of the voir dire testimony@ to review a trial court=s decision on a challenge
to a juror for cause); Cantu v. State, 842 S.W.2d 667, 687 (Tex. Crim.
App. 1992) (reviewing the Atotality of the voir dire@ to determine an issue
regarding the amount of time given for voir dire), cert. denied, 509
U.S. 926 (1993).





[7]We will add emphasis
through italics to the prosecutor=s statements and questions that give context to
the challenged commitment question.